**David NEWMAN, Plaintiff**

v.

**GIANT FOOD, INC., et al., Defendants**

**No. CIV.A. JFM–02–540.**

United States District Court,
D. Maryland.

Feb. 20, 2002.

See also, 187 F.Supp.2d 462.

JoAnn Patricia Myles, Law Office, Largo, MD, for Plaintiff.

Robert P. Watkins, Julie Hilden, Kumiki Gibson, Kathleen L. Jennings, Kristin E. Adler, Jeffrey M. Smith, Williams and Connolly, Washington, DC, Mark Scott London, London & Mead, Washington, DC, Claudette V. Ferron, Law Office, Washington, DC, for Defendants.

## OPINION

MOTZ, District Judge.

Plaintiff David Newman has instituted this action against Giant Food, Inc. ("Giant")[1] alleging racially disparate treat-

---

1. Newman has also asserted claims against several of Giant's employees. Those defen-

ment and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, quantum meruit, discrimination under the Maryland Human Relations Act, intentional infliction of emotional distress, negligent infliction of emotional distress, negligent hiring and retention, and assault and battery. Defendant now moves for summary judgment on all counts. The motion will be granted.

### I.

David Newman was hired by Giant as a vacation relief worker at Giant's Landover, Maryland warehouse in August 1980.[2] After sixty days, Connor was hired into a permanent position in the Landover warehouse. Newman has held a number of positions at Giant, including as a selector, a janitor, in an inventory control position, as a forklift operator and in a receiving position. Currently, Newman is employed as a janitor. Throughout his employment, Newman has worked primarily in the meat and deli departments of the Landover warehouse.

On March 14, 1996, while Newman was working in an inventory control position in the warehouse aisles, a co-worker, Junior Fortney, blew the horn on the machine he was driving and told Newman to get out of his way. (Newman Dep. at 242.) When Newman did not immediately move, Fortney cursed at Newman, rolled by Newman on the machine and knocked over New-

man's merchandise. Newman responded by knocking over Fortney's merchandise. Fortney then approached Newman and the two men grabbed each other's shirt collars. (*Id.* at 243.) Once the two men released each other, Newman turned his back and Fortney charged at him with a case cutter, a small rectangular cylinder with a blade on the top, in an attempt to cut Newman's throat. (*Id.* at 243–44.) Newman raised his hand and blocked Fortney, but was cut on his pinky finger. Due to this cut, Newman went to the emergency room and was diagnosed as having a superficial laceration of the pinky finger that required five stitches. (*Id.* at 250–51.)

Following this altercation, Newman went to speak with his shift manager, Ralph Washington, Jr. Initially, Newman told Washington that he cut himself with a case cutter because he was aware of a Giant policy that stated that any employees involved in a fight would be terminated. (*Id.* at 245–46.) Newman, realizing that he could later be terminated for being dishonest, then told Washington that Fortney had cut him. (*Id.* at 246.) Washington called the police and an ambulance, Fortney was arrested, and Newman was taken to the hospital. (*Id.* at 247–48.)

Giant's policy states that "[f]ighting on company property is prohibited regardless of provocation. Those causing fighting are subject to immediate termination." (*See*

dants are entitled to summary judgment for the reasons stated in the accompanying opinion in *Carson v. Giant Food, Inc.*, JFM–96–2882. That opinion addresses Newman's hostile work environment claims under Title VII and section 1981 and state law claims against Giant, except negligent hiring and retention and assault and battery, in addition to global arguments made by Newman and other Plaintiffs concerning the early right-to-sue notices issued to them by the Equal Employment Opportunity Commission and the viability of applying the continuing violation doctrine.

Thus, this opinion focuses only on Newman's discriminatory discipline claims under Title VII and section 1981, disparate treatment claims under section 1981 and Newman's state claims that are not addressed in the *Carson* opinion: negligent hiring and retention, and assault and battery.

2. Vacation relief workers are part-time workers hired for up to one year to replace vacationing permanent workers. (*See* Giant Mem. at 5.)

Mem. from Thurston to all Distribution Division Associates, Def. Ex. 2.) In accordance with this policy, Washington suspended both men on March 14, 1996.[3] Giant investigated the altercation, fired Fortney,[4] and reinstated Newman on March 28, 1996. Additionally, Newman was paid in full for the time during which he was suspended. (*See* Garrett Decl. at ¶ 8.)[5]

Sometime from 1993–1995, Newman heard from a co-worker that there was an emergency loan program. This program was not publicized in the warehouse, but Newman heard that white employees were able to get loans in the past. Newman went to Vice–President Sam Thurston and asked him for a loan. Thurston gave Newman the loan, but told him not to tell anyone else. (Newman Dep. at 320.) When Newman told a black co-worker, Thurston gave that co-worker a loan and then canceled the program.

For several months, Newman took sick leave on the same day of each month (the day he earned an extra day of sick leave). After this occurred several times, Newman's manager spoke to him and told him that there would be disciplinary action if he continued this practice. Newman was never disciplined for taking sick leave, however, he states that a white co-worker also took sick leave on the same day of every month and was never disciplined or spoken to by a manager about the practice. (*Id.* at 342–44.) Finally, Newman alleges that he saw a white co-worker arrive late to work at least 23 times without being disciplined, while Newman was disciplined with a verbal warning or counseling letter when he arrived to work late. (*Id.* at 335–37.)

## II.

Giant argues that it is entitled to summary judgment on Newman's claims for discriminatory discipline under Title VII and section 1981.[6] To establish a prima facie case of discriminatory discipline, Newman must show "(1) that he is a member of the class protected ... (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against him were more severe than those enforced against those other employees." *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir.1993); *Moore v. City of Charlotte*, 754 F.2d 1100,

3. Newman stated that he returned to the Giant warehouse after going to the emergency room and was notified that he was terminated. Newman returned to the deli department, escorted by a guard, and saw Fortney working and celebrating with co-workers. Still, all documentation shows that Fortney was suspended sometime on March 14, 1996 and there is no evidence Fortney worked at Giant after this date. (*See* Fortney Termination Notice, Def. Ex. 4.)

4. Newman believes that Giant's documentation showing that Fortney was terminated as a result of the fight was "manufactured." (*See* Pl.'s Opp'n. at 10; Newman Dep. at 256–57.) Newman believes that Fortney was fired for providing false information on his employment application. However, documentation provided by Giant shows that Newman was terminated both for fighting and for providing false information. (*See* Fortney Termination Notice, Def. Ex. 4.)

5. In his opposition, Newman's attorney argues that Newman was not paid and points to his deposition for support of that argument. However, in his deposition, Newman stated that he could not *remember* if he received backpay. (Newman Dep. at 262) (emphasis added). Newman never stated that he did not receive backpay for this time period.

6. "Under Title VII and ... Section 1981, the elements of the required prima facie case are the same." *Gairola v. Com. of Va. Dept. of General Services*, 753 F.2d 1281, 1285 (4th Cir.1985).

1105–06 (4th Cir.1985). If the plaintiff establishes a prima facie case, the burden shifts to the employer to advance a legitimate, nondiscriminatory reason for the adverse employment action. *See Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the employer successfully proffers such an explanation, the burden returns to the plaintiff to show that the proffered reason is a pretext for impermissible discrimination. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ Newman is unable to establish the third element of a prima facie case. Newman and Fortney were both initially suspended for fighting. Newman argues that he should not have been suspended, however, he also admits that he knocked over Fortney's merchandise and grabbed Fortney's collar. Giant's policy clearly states that employees caught fighting on Giant grounds are subject to immediate termination, regardless of provocation. Following investigation, Newman was reinstated and given backpay for the two weeks during which he was suspended, while Fortney was terminated. (*See* Newman Dep. at 251; Fortney Termination Notice, Def. Ex. 4; Garrett Decl. at ¶ 8.) The disciplinary measures suffered by Fortney were more severe than those suffered by Newman. Accordingly, summary judgment will be granted on Plaintiff's disparate discipline claims.

### III.

■ Giant seeks summary judgment on Plaintiff's disparate treatment claims under section 1981. "As a general matter, to make out a prima facie case for employment discrimination, the Plaintiff must show that: (1) he is a member of a protected group; (2) he earned satisfactory performance marks; (3) he suffered an adverse employment action; and (4) other similarly situated employees outside his protected class were treated more favorably." *McCain v. Waste Mgmt. Inc.,* 115 F.Supp.2d 568, 573–74 (D.Md.2000) (citations omitted).

Newman asserts that he suffered numerous instances of disparate treatment, however, only three alleged incidents occurred during the relevant time period: (1) denying Newman a no-interest emergency loan; (2) disciplining Newman for arriving late to work; and (3) discussing with Newman the appropriateness of taking sick leave on the same day of each month. (*See* Pl.'s Opp'n. at 28.) Newman is unable to establish the third element of a prima facie case for all three claims.

■ First, Newman is unable to establish that he suffered an adverse employment action in the claim involving the loan. To qualify as an adverse action, an employer's action must "adversely affect[ ] the 'terms, conditions, or benefits' of [the plaintiff's] employment." *Von Gunten v. Maryland,* 243 F.3d 858, 865 (4th Cir.2001) (*quoting Munday v. Waste Mgmt. of North America, Inc.,* 126 F.3d 239, 242 (4th Cir.1997)). Although he was initially denied a loan, Newman received the only no-interest emergency loan he requested.[7] Since Giant provided Newman with the loan, Giant took no adverse employment action.

■ Second, Newman cannot establish that the verbal warning or counseling letter he received for arriving late was an adverse employment action. (*See* Newman Dep. at 336.) Such discipline, without evidence that the warning could lead to

---

**7.** Newman provides no evidence that the loan "program may very well still exist at Giant and may not be offered to African–Americans." (*See* Pl.'s Opp'n. at 39.)

further disciplinary action, such as termination, does not constitute an adverse employment action. *See Nye v. Roberts*, 159 F.Supp.2d 207, 213–14 (D.Md.2001) (finding a written reprimand did not constitute an adverse employment action because "[r]eprimands do not automatically affect the terms and conditions of employment" and the reprimand did "not state that it would lead to her termination or demotion or a decrease in pay"); *see also Von Gunten*, 243 F.3d at 869 ("[T]erms, conditions, or benefits of a person's employment do not typically, if ever, include general immunity from the application of basic employment policies or exemption from a state agency's disciplinary procedures."). Here, Newman has not presented any evidence that the verbal warning or counseling letter potentially led to termination, demotion, a decrease in pay or similar adverse action. Newman states that Giant's policy was to terminate an employee who was late to work eleven times. (*See* Newman Dep. at 337.) However, Newman has not presented any evidence that the reprimands at issue were counted against him under the policy. In fact, Newman's evidence suggests he simply was verbally reprimanded by a manager for being late, without any consequences. Thus, Newman is unable to establish that he suffered an adverse employment action.[8]

 Third, Newman cannot establish that the conversation he had with a manager concerning his sick leave constituted an adverse employment action. This conversation, in which a manager questioned Newman for taking sick leave every month on the same day (the day he earned an extra day of sick leave), did not adversely affect the terms, conditions, or benefits of Newman's employment. Newman was

never disciplined. Additionally, he was acting improperly because he was not actually sick on those days. (*See* Newman Dep. at 342.) Newman suffered no adverse employment action under any of his section 1981 disparate treatment claims. Accordingly, summary judgment will be granted on those claims.

### IV.

 Giant moves for summary judgment on Newman's negligent hiring and retention claim. The Maryland Workers' Compensation Act ("WCA") preempts this tort action. Md. Labor & Employment Code Ann. § 9–101 *et seq.* The WCA provides the exclusive remedy "to an employee 'for an injury or death arising out of and in the course of employment'" unless the injury is shown to be the result of "the deliberate intent of the employer to injure or kill the covered employee." *Demby v. Preston Trucking Co.*, 961 F.Supp. 873, 881 (D.Md.1997) (*quoting Lagrimas v. Gossel*, 1993 WL 18951, at *3 (D.Md.1993)); *see also Tynes v. Shoney's Inc.*, 867 F.Supp. 330, 332 (D.Md.1994); WCA § 9–509(d). There is no evidence that Giant deliberately intended to injure or kill Newman. Accordingly, summary judgment will be granted on the negligent hiring and retention claim.

Giant moves for summary judgment on Newman's assault and battery claims. The WCA also provides the exclusive remedy for this claim. Accordingly, summary judgment will be granted on the assault and battery claims.

A separate order is attached.

### ORDER

For the reasons stated in the accompanying Opinion and in the related Opinion

---

8. Even if Newman could establish that he suffered an adverse employment action, there is no evidence of pretext. Newman was reprimanded for being late and there is no evidence that he was not late or that Giant did not believe he was late.

in the case of *Carson v. Giant Food, Inc.*, JFM–96–2882, it is, this 20th day of February 2002

ORDERED

1. Defendants' motions for summary judgment against Plaintiff on all causes of action in Plaintiff's complaint are Granted; and

2. Judgment is hereby entered in favor of the Defendants.