Maryrose E. **OGUEZUONU**, Plaintiff,

v.

**GENESIS HEALTH VENTURES, INC., Defendant.**

**No. CIV.RDB 04–80.**

United States District Court, D. Maryland, Northern Division.

Jan. 28, 2005.

---

Charles Owusu Kwarteng, Law Office of Charles O Kwarteng, Baltimore, MD, for Maryrose E. Oguezuonu, Plaintiff.

Traci Burch, Shawe and Rosenthal LLP, J Michael McGuire, Shawe and Rosenthal LLP, Baltimore, MD, for Genesis Health Ventures, Inc., Defendant.

## MEMORANDUM OPINION

BENNETT, District Judge.

This is an employment discrimination action brought by Plaintiff Maryrose E. Oguezuonu against her former employer, Genesis Health Ventures, Inc. ("Genesis"). Ms. Oguezuonu is of Nigerian national origin. She contends that she was demoted and ultimately terminated based on her national origin and race, in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e, et seq. ("Title VII"). In addition, Plaintiff contends that Defendant discriminated against her based on her race and gender with respect to her wages, in violation of Title VII and the Equal Pay Act ("Equal Pay Act"), 29 U.S.C. § 206(d)(1). Plaintiff's original Complaint contained the following eleven Counts:

(1) national origin discrimination pursuant to Title VII;

(2) race discrimination pursuant to Title VII;

(3) retaliation pursuant to Title VII;

(4) unequal pay for unequal work pursuant to Title VII;

(5) violation of the Equal Pay Act;

(6) national origin discrimination pursuant to Article 49B of the Annotated Code of Maryland, §§ 16 et seq. ("Article 49B");

(7) wrongful discharge;

(8) negligence;

(9) conversion;

(10) intentional infliction of emotional distress; and

(11) breach of contract.

In an Order dated August 4, 2004, this Court granted Defendant's Motion to Dismiss Counts Six, Seven, Eight, Nine, and Ten. The Defendant's Motion to Dismiss Count Eleven was granted as to Plaintiff's claim of a breach of a covenant of good faith and fair dealing, but denied as to breach of contract as to fair procedures in termination. This Court ordered that discovery proceed as to the remaining counts, which were not dismissed, specifically:

(1) national origin discrimination pursuant to Title VII;

(2) race discrimination pursuant to Title VII;

(3) retaliation pursuant to Title VII;

(4) unequal pay for unequal work pursuant to Title VII;

(5) violation of the Equal Pay Act;

(11) breach of contract as to a claim that Defendant did not afford Plaintiff the "specified fair procedures" when it terminated her.

Pending before the Court is Defendant's Motion for Summary Judgment as to Counts One, Two, Three, and Five of Plaintiff's Complaint. While Defendant has not moved for summary judgment with respect to Counts Four and Eleven, it has moved for a finding of contempt and Involuntary Dismissal with Prejudice and for Sanctions as to any remaining claims. That Motion stems from Plaintiff's apparent disregard for various discovery orders issued by this Court.

The issues have been fully briefed and no hearing is necessary. *See* Local Rule 105.6 (D.Md.2004). For the reasons that follow, Defendant's Motion for Summary Judgment with respect to Counts One, Two, Three, and Five will be granted and Defendant's Motion for Involuntary Dismissal with Prejudice as to the remaining Counts Four and Eleven will be granted.

## I. *Background*

Plaintiff Oguezuonu is a thirty-one year old black woman of Nigerian national origin, who resides in Baltimore County, Maryland. Defendant Genesis operates 200 skilled nursing centers and assisted living facilities in twelve eastern states, including Maryland. In May of 2002, Genesis hired Oguezuonu to work as a supervising charge nurse in its Long Green Center nursing facility located in Baltimore, Maryland. After just six months employment, she resigned from that facility in November of 2002. However, Genesis rehired her in January of 2003 to work as a unit director in a Genesis facility located in Randallstown, Maryland. The unit director position is superior to the charge nurse position Plaintiff held at the Long Green facility. To be qualified to serve as a unit director, an employee must be either a registered nurse or a licensed practical nurse. (Griffin Dep. at 17.) The educational requirements for the unit di-

rector position vary depending upon the number of years of nursing experience that a unit director has. (Def.'s Mem. Supp. Def.'s Mot. Summ. J. Ex. 6 (unit director job description).) The unit director is responsible for supervising charge nurses, nurses, and other staff. (*Id.*) In addition, the unit director is expected to perform routine nursing duties as needed. (*Id.*)

Throughout Oguezuonu's tenure there, the Randallstown facility was run by Administrator Irvin Winebrenner. Under Mr. Winebrenner's supervision were various department directors, including the Director of Nursing, Josephine Griffin. Ms. Griffin supervised four unit directors, including Plaintiff, who were responsible for supervising charge nurses and other staff members responsible for serving patients in each of the four units. Oguezuonu was the unit director of the Liberty Hall Unit. All of the unit directors, including Plaintiff, reported to Josephine Griffin. The three other unit managers at Randallstown included: Lendora Dixon, black female of Filipino descent; Charles Sarbeng, a black male of Nigerian descent; and Tameisha Williams, an African–American woman. In April of 2003, Plaintiff was demoted from unit director to charge nurse. Prior to her demotion, Director of Nursing Josephine Griffin verbally counseled her several times concerning the repeated failure of employees under Plaintiff's supervision to perform essential duties. (Griffin Dep. at 38.) When the verbal counseling produced no improvement, Ms. Griffin placed Plaintiff on a Performance Improvement Plan setting forth specific areas in which Plaintiff was required to improve and noting the dates by which the improvements must be made. (Def.'s Mem. Supp. Def.'s Mot. Summ. J. Ex. 7.) On April 21 or 22, 2003, Griffin met with Oguezuonu to discuss her progress on the improvement plan. In that meeting, Griffin informed

Plaintiff that she would be demoted for failure to show adequate improvement in the areas specified in the improvement plan. (Griffin Dep. at 35.) Although Plaintiff's responsibilities were reduced, her pay remained the same. (Oguezuonu Dep. at 166.) As a result of her demotion, Plaintiff was asked to surrender her office, various keys and a pager. (Griffin Dep. 32–33, 85–86, 138.) One of the other unit directors, Lendora Dixon, assumed responsibility for Plaintiff's unit. After Plaintiff was notified of her demotion, she wrote a letter to the Randallstown Administrator Wineburger complaining of her demotion and demanding a written explanation detailing why she was demoted. (Def.'s Mem. Supp. Def.'s Mot. Summ. J. Ex. 8.) In that letter, Plaintiff acknowledges that there was a "problem in Liberty hall [*sic*]." (*Id.*) However, she contended that "it is not fair [for the responsibility] to fall on [Plaintiff] because [she is] the unit Director." (*Id.*)

Oguezuonu stopped reporting to work on April 27, 2003 after her demotion was publicly announced. (Oguezuonu Dep. at 166–167.) At some point after April 27, 2003, she verbally reported that she had been involved in an automobile accident. On May 18, 2003, Plaintiff's attorney (retained in connection with the auto accident) faxed a letter to the Defendant Genesis indicating that Plaintiff was involved in an automobile accident on April 30, 2003, and that she had been referred to physical therapy. On May 19, Oguezuonu faxed a doctor's note to Genesis indicating that she would be out of work until June 2, 2003. (Def.'s Mem. Supp. Def.'s Mot. Summ. J. Ex. 11.)

To be eligible for either a leave of absence or Family Medical Leave Act leave, an employee must be employed by Genesis for at least one year, and must have worked at least 1250 hours. *See* Family Medical Leave Act, 29 U.S.C. § 2611(2)(A); (*See* Def.'s Mem. Supp. Def.'s Mot. Summ. J. Ex. 9.) As of May 19, 2003, Plaintiff had not met those requirements. Oguezuonu has acknowledged that she was not entitled to sick leave or personal time. (Pl.'s Dep. at 251.) Plaintiff's one year anniversary with Genesis would have occurred on May 20, 2003. (Pl.'s Dep. at 150.) Accordingly, Oguezuonu's absence from work beginning on April 27, 2003 was without authorization and Genesis terminated her employment due to that unauthorized leave on May 19, 2003. (*See* Def.'s Mem. Supp. Def.'s Mot. Summ. J. Ex. 13.)

On July 17, 2003, Oguezuonu filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff's Charge alleged, *inter alia*, race, gender, disability and national origin discrimination regarding her termination. Less than one month later, on August 12, 2003, the EEOC denied all of Plaintiff's claims and issued her a "right to sue" letter, in which it stated that it was "unable to conclude that the information obtained establishes violations of the statutes." (Compl.Ex. 1.)

On November 12, 2003, Plaintiff filed her eleven-count Complaint in the Circuit Court for Baltimore City, Maryland, seeking more than $6,000,000 in compensatory and punitive damages. On January 9, 2004, Defendant duly removed the Complaint to this Court pursuant to federal question jurisdiction, 28 U.S.C. §§ 1331 and 1441(b), or, in the alternative, diversity of citizenship, 28 U.S.C. § 1332. As noted above, on August 4, 2004, this Court granted Genesis' Motion to Dismiss Counts Six, Seven, Eight, Nine, Ten, and a portion of Eleven, but ordered that discovery proceed as to the remaining Counts. Throughout these proceedings, specifically on May 19, 2004, April 9, 2004, and July 21, 2004, this Court ordered Plaintiff to

comply with the discovery rules and provide information to Defendant.

## II. Standard of Review

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252, 106 S.Ct. 2505. In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), but the opponent must bring forth evidence upon which a reasonable fact finder could rely. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

This Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md.2001) (citations omitted). Indeed, this Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir.1993) (quoting *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987)).

## III. Analysis

### A. Counts One, Two and Three–National Origin and Race Discrimination and Retaliation Under Title VII

The first two Counts of Plaintiff's Complaint allege that Plaintiff was demoted and eventually terminated based on her race and national origin, in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"). Section 703(a)(1) of Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race ... or national origin ..." 42 U.S.C. § 2000e–2(a)(1). Because she has presented no direct evidence of discrimination, Plaintiff's claims must be analyzed under the framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). As the Court of Appeals for the Fourth Circuit recently reiterated:

Under the *McDonnell Douglas* three-step framework, the plaintiff-employee must first prove a *prima facie* case of discrimination by a preponderance of the evidence. If she succeeds, the de-

fendant-employer has an opportunity to present a legitimate, non-discriminatory reason for its employment action. If the employer does so, the presumption of unlawful discrimination created by the *prima facie* case drops out of the picture and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination. *Mackey v. Shalala*, 360 F.3d 463, 468 (4th Cir.2004), *quoting Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir.1996).

### i. *Plaintiff's Demotion*

■ To make out a *prima facie* case of discriminatory demotion, Oguezuonu must demonstrate that: (1) she is a member of a protected class, (2) she was qualified for her job and her performance was satisfactory, (3) despite her qualifications she was removed from her unit director position and reassigned to a charge nurse position, and (4) the unit director position remained open to similarly qualified applicants after her reassignment. *See Love–Lane v. Martin* 355 F.3d 766, 787 (4th Cir.2004) (citing *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1228 (4th Cir.1998)). The Defendant Genesis has conceded that Oguezuonu is a member of a protected class, and that her demotion constituted adverse employment actions. (Def.'s Mem. Supp. Mot. Summ. J. at 19.) Nonetheless, Defendant argues that Plaintiff cannot satisfy the second and third elements because she cannot demonstrate that her job performance was satisfactory.

■ In attempting to satisfy her burden in establishing discriminatory demotion, Oguezuonu's main argument is that her job was given to a less-qualified African-American. This, she contends, raises an inference of unlawful discrimination based on national origin. Lendora Dixon, a black female of Filipino descent, the unit director who assumed the supervisory responsibility for Plaintiff's unit, is a licensed practical nurse ("LPN"), while Plaintiff is a registered nurse ("RN"). RN's are required to complete more testing and higher-level testing than LPN's. In addition, Oguezuonu alleges that Dixon does not hold the college degree that is required for the unit director position whereas Plaintiff holds a bachelor's degree and is in the process of obtaining a master's degree.

This evidence does not raise an inference of unlawful discrimination. Ms. Dixon was acting as a unit director when she assumed Oguezuonu's responsibilities. Based on the record before the Court, it appears that Ms. Dixon was performing her duties as unit director at least satisfactorily. On the other hand, Plaintiff acknowledges that her unit had a "problem" and that the employees under her supervision were not performing adequately. (Def.'s Mem. Supp. Def.'s Mot. Summ. J. Ex. 8.) The Defendant Genesis' decision to replace a manager having supervisory issues with a proven manager does not support a rationale inference of discrimination, even when viewed in a light most favorable to Oguezuonu.

■ In addition to her concerns over Dixon's qualifications, Plaintiff also asserts that Ms. Dixon, and Plaintiff's "American-born" subordinates, committed more serious infractions than any which she ever committed, but Plaintiff asserts that these other individuals were not demoted. (Oguezuonu Aff. ¶ 3.) Aside from her bald allegations, Plaintiff has presented absolutely no evidence to support this assertion. Plaintiff has failed to point to a single instance in which Dixon, or any other supervisory employee, was not demoted after repeated failures to correct deficiencies in staff performance, as evidenced by Oguezuonu's work record. What is more, by definition, her subor-

dinates are not "similarly-situated" employees for the purpose of establishing whether Plaintiff's demotion for failure to properly supervise employees was discriminatory. Oguezuonu's unsupported allegations are simply insufficient to establish a *prima facie* case of national origin discrimination. *See, e.g., Bouchat v. Balt. Ravens Football Club,* 346 F.3d 514, 526 (4th Cir. 2003) (noting that a plaintiff can "survive [a] motion for summary judgment only by adducing specific, nonspeculative evidence....").[1] *See Newman v. Giant Food, Inc.,* 187 F.Supp.2d 524, 528 (D.Md. 2002) (finding that plaintiff failed to establish a *prima facie* case of disparate treatment where he could not show that disciplinary measures enforced against him were more severe than those enforced against others).

Likewise, there is a dearth of evidence to substantiate Plaintiff's allegation that her demotion was based on race. Plaintiff's only suggestion that her demotion is based on racial discrimination is the allegation in her Complaint, in which she alleges that Defendant "reassign[ed] plaintiff's position to a [*sic*] less qualified employees who are white." (Compl.¶ 20.) This allegation is unsupported by Plaintiff's own testimony. (*See* Oguezuonu Aff. ¶ 10) (referring to Defendant's reassignment of Plaintiff's duties to "Lendora Dixon, an African–American.") As a consequence, Plaintiff has failed to make out a *prima facie* case of discriminatory discharge.

■ Alternatively, assuming, for the sake of argument, that Oguezuonu could establish a *prima facie* case of demotion in violation of Title VII, the Defendant Genesis has adduced testimonial and documentary evidence chronicling Plaintiff's supervisory difficulties which Defendant has shown resulted in her demotion. Among other evidence, Defendant has provided the Court with a copy of a Corrective Action Notice and Performance Improvement Plan which set forth specific deficiencies in Plaintiff's performance, and which establish mandatory improvement goals and target dates by which these goals must be attained. (*See* Def.'s Mem. Supp. Def.'s Mot. Summ. J. Ex. 7.) Plaintiff has all but acknowledged those difficulties. (*See* Def.'s Mem. Supp. Def.'s Mot. Summ. J. Ex. 8.) Defendant has also presented unchallenged testimony by Josephine Griffin that Plaintiff failed to meet the goals set forth in the Improvement Plan, and was demoted for that reason alone. (Griffin Dep. at 35.)

Because the Defendant Genesis has offered a legitimate, non-discriminatory reason for its conduct, the ultimate burden shifts to the Plaintiff to show that the Defendant's stated reason is "pretextual" or false. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817. In evaluating whether the plaintiff has adduced a sufficient quantity of proof, the court may consider the relative strength of the employer's asserted nondiscriminatory reasons. *Burns v. AAF–McQuay, Inc.,* 96 F.3d 728, 732 (4th Cir.1996). However, unsubstantiated allegations and bald assertions will not carry the day for the employee. *Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 960 (4th Cir.1996); *see also Goldberg v. B. Green & Co.,* 836 F.2d 845, 848 (4th Cir.1988) (stating that the plaintiff's own opinions and conclusory allegations do not have sufficient "probative force to reflect a

---

1. Plaintiff also makes reference to a "pattern and practice" of discrimination based on national origin. However, she offers no discussion, let alone evidence, as to how other injured, non-African born employees were given more favorable treatment. Thus, Oguezuonu has not met her burden of proving a *prima facie* case of disparate treatment. *See Newman,* 187 F.Supp.2d at 528.

genuine issue of material fact"). If the plaintiff cannot present facts that would permit a reasonable inference that the stated reason is a pretext for discrimination, summary judgment in favor of the defendant should be granted. *See Rowe v. Marley Co.,* 233 F.3d 825, 830 (4th Cir. 2000). Furthermore, Plaintiff must demonstrate that the proffered reason is "a lie, not merely a mistake." *Price v. Thompson* 380 F.3d 209, 215 n. 1 (4th Cir.2004) (quoting *Jordan v. Summers,* 205 F.3d 337, 344 (7th Cir.2000)). In this case, Plaintiff has failed to meet that burden. Aside from Plaintiff's conclusory allegations, there is nothing before this Court that would "forecast any evidence that casts doubt on the veracity" of Defendant's proffered reason for Oguezuonu's demotion. *Rowe v. Marley Co.,* 233 F.3d 825, 830–31 (4th Cir.2000). Accordingly, summary judgment must be granted as to Plaintiff's demotion on the alternative ground that she has failed to demonstrate pretext. Accordingly, summary judgment will be granted as to Plaintiff's claim of discriminatory demotion on the basis of national origin, race, and gender.

### ii. *Plaintiff's Termination*

Plaintiff also asserts that her termination was based on race and/or national origin discrimination in violation of Title VII, and that the termination was in retaliation for her protests of Defendant's alleged discrimination, also in violation of Title VII. Once again, Oguezuonu must satisfy the three-step proof scheme established in *McDonnell Douglas. See McDonnell Douglas,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

### a. *Discriminatory Discharge*

■ To establish a *prima facie* case of discriminatory discharge under Title VII, Oguezuonu must show: (1) that she is a member of a protected class; (2) that she suffered from an adverse employment action; (3) that at the time the employer took the adverse employment action she was performing at a level that met her employer's legitimate expectations; and (4) that the position was filled by a similarly qualified applicant outside the protected class. *King v. Rumsfeld,* 328 F.3d 145, 149 (4th Cir.2003) (citing *Brinkley v. Harbour Recreation Club,* 180 F.3d 598, 607 (4th Cir.1999)). The Defendant Genesis has conceded that Plaintiff is a member of a protected class, and that her termination constituted an adverse employment action. (Def.'s Mem. Supp. Mot. Summ. J. at 19.) Still, Defendant contends that Plaintiff cannot satisfy the third element in light of the undisputed evidence.

■ Oguezuonu cannot make out a *prima facie* case of discriminatory discharge because she cannot show that she met Genesis' "legitimate expectations." *King,* 328 F.3d at 149. Defendant contends that Plaintiff was terminated for taking unauthorized leave time. Genesis has submitted the actual termination letter, dated May 19, 2003, which states, in relevant part: "This letter is to advise you that although you have been absent since April 29, 2003 due to medical or personal reasons; you have not yet met the eligibility requirements for a Genesis Leave of Absence, which is one year of employment." (Def.'s Mem. Supp. Mot. Summ. J. Ex. 13.) The letter also notes that Oguezuonu may be eligible for rehire if she is able to return to work at some point. (*Id.*) Oguezuonu acknowledges that she was absent from work from April 27, 2004 until May 19, 2004. (Oguezuonu Dep. at 166–167.) Moreover, she also acknowledges that she knew that she was not authorized to take leave during that period. (*Id.* at 251.) Nonetheless, Oguezuonu testified that she thought she was authorized to take leave

pursuant to the Family Medical Leave Act ("FMLA"). Plaintiff's subjective beliefs are of no moment. Plaintiff has provided no evidence to rebut the documentary and testimonial evidence presented by Genesis demonstrating that she was not, in fact, eligible for FMLA leave because she had not worked for Defendant for at least one year and 1250 hours. *See* Family Medical Leave Act, 29 U.S.C. 2611(2)(A).

Likewise, Oguezuonu has failed to substantiate her allegations that Defendant's leave policies are discriminatory. (*See* Compl. ¶¶ 14, 15, 32 (alleging that Defendant's leave policies constitute a "custom, practice pattern and policy" of discrimination).) She has identified no instance in which a similarly-situated employee of a different race or national origin received more favorable treatment with regard to race. What is more, Plaintiff has failed to adduce evidence suggesting that Genesis' facially-neutral leave policies have a disparate impact upon employees of a particular race or national origin. *See generally Carter v. Ball*, 33 F.3d 450, 456 (4th Cir.1994) (on the requirements for establishing inference of discrimination through reliable statistical evidence).

■ Furthermore, assuming, *arguendo*, that Plaintiff could establish a *prima facie* case of discriminatory discharge, her claim must fail because she has failed to demonstrate pretext. Aside from her own speculation, Plaintiff has presented no evidence that would "cast down upon the veracity" of Defendant's proffered explanation for her termination. *See Rowe*, 233 F.3d at 830–31. Plaintiff argues that it is unfair for Defendant to terminate her one day before she arguably might have become eligible for leave. The fairness or wisdom of Defendant's termination decision is not the proper test. This Court "does not sit as a kind of super-personnel department weighing the prudence of employment de-

cisions made by firms charged with employment discrimination" so that "when an employer articulates a reason for [its treatment of the plaintiff] not forbidden by law, it is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the [employment decision]." *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 298–299 (4th Cir.1998) (internal quotations and citations omitted). Consequently, Defendant's Motion for Summary Judgment will be granted as to Plaintiff's claim of discriminatory termination on the basis of national origin, race, and gender.

### b. *Retaliatory Discharge*

■ In Count Three of her Complaint, Oguezuonu contends that her termination was in retaliation for her various complaints against Genesis. Title VII makes it unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII] or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C.A. § 2000e–3(a). To satisfy the *prima facie* elements of retaliation, Oguezuonu must demonstrate: "(1) that she engaged in a protected activity; (2) that an adverse employment action was taken against her; and (3) that there was a causal connection between the first two elements." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 656 (4th Cir.1998). She cannot satisfy these elements.

■ Preliminarily, it is not clear that Oguezuonu "engaged in a protected activity." *Dowe*, 145 F.3d at 656. The primary complaint supporting Plaintiff's retaliation claim is the letter that she sent to Administrator Winebrenner. (Def.'s Mem. Supp. Mot. Summ. J. Ex. 8.) In that letter,

Oguezuonu complains generally about the way she was treated when she was demoted. (*Id.*) The letter contains no reference, implicit or explicit, to any racial or national origin discrimination by Defendant. (*Id.*) In addition to the letter, Plaintiff references oral complaints that she made to various individuals at Genesis. For example, Plaintiff stated in her Affidavit, "I complained about appropriate screening of patients/customers being admitted, failure of nurses to do appropriate testing for patients ... [and][a]s a result of such complaints ... I suffered retaliation from Genesis ... including termination." (*See, e.g.,* Oguezuonu Aff. ¶ 6.) Plaintiff cannot establish retaliation because Plaintiff has failed to present evidence that she was subjected to retaliation because she protested discrimination or otherwise engaged in activity protected by Title VII. *Harris v. Maryland House of Correction,* 209 F.Supp.2d 565, 570 (D.Md.2002) (recognizing that general complaints about "unfair treatment" are insufficient to support a Title VII retaliation claim).

Plaintiff has also failed to demonstrate any connection between her alleged complaints and her termination. Rather, based on the record before the Court, it is apparent that Plaintiff was fired for taking unauthorized time off from work. Her termination letter invites her to reapply when she is able to return to work. (Def.'s Mem. Supp. Mot. Summ. J. Ex. 13.) There is nothing before this Court that remotely supports the inference that the termination was retaliatory. As such, Plaintiff cannot satisfy the elements' required to sustain her retaliation claim.

For the same reasons, even if she could satisfy these elements, Plaintiff cannot demonstrate pretext under the *McDonnell Douglas* standards. *See McDonnell Douglas,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Once again, Plaintiff has made

no showing indicating that the proffered reason for her termination was false. Her claim also fails for that reason. *See Rowe,* 233 F.3d at 830 (recognizing that a plaintiff must adduce specific evidence of pretext to survive summary judgment).

Plaintiff has failed to satisfy the requisite showing with respect to her claims of national origin discrimination, race discrimination and retaliation. As such, Defendant's Motion for Summary Judgment will be granted as to Counts One, Two and Three of Plaintiff's Complaint.

## B. Count Five—Violation of the Equal Pay Act

Count Five of Oguezuonu's Complaint alleges that Defendant violated the Equal Pay Act, 29 U.S.C. § 206(d)(1) by (1) engaging in gender-based wage discrimination by paying Plaintiff less than male counterparts performing essentially the same duties; (2) that Defendant "unlawfully segregates employees for the purpose of wage discrimination." (Compl.¶¶ 27, 29, 30.) The Equal Pay Act provides, in relevant part:

> No employer ... shall discriminate ... between employees on the basis of sex by paying wages to employees ... at a rate less than the rate at which he pays wages to employees of the opposite sex ... for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

29 U.S.C. §§ 206(d)(1). To make out a *prima facie* case under the Act, "the burden falls on the plaintiff to show that the skill, effort and responsibility required in

her job performance are equal to those of a higher-paid male employee." *Wheatley v. Wicomico County, Maryland,* 390 F.3d 328, 332 (4th Cir.2004) (quoting *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974)). Plaintiff has failed to make this required showing in this case.

■■ The only evidence Plaintiff presents to substantiate her Equal Pay Act claim is her speculation that one male employee was paid at a higher pay scale. Charles Sarbeng was one of the three other unit directors employed at the Randallstown facility during Oguezuonu's tenure. In her deposition, Plaintiff testified that Mr. Sarbeng told her that he was paid more than her. (Oguezuonu Dep. 130–133.) Throughout her brief employment with Genesis, Plaintiff earned $28.70 per hour. From January through March of 2003, Sarbeng was earning $28.09 per hour. (Def.'s Mem. Supp. Mot. Summ. J. Ex. 22 at 10.) Sarbeng's pay was increased to $29.49 in March of 2003. (*Id.*) Plaintiff was therefore paid at a higher rate than Sarbeng for most of her short tenure. Moreover, Oguezuonu has failed to refute the evidence indicating that Sarbeng was granted the pay increase because he had been with the company for over four years. (*Id.*) She was employed with the Defendant for less than one year. The undisputed evidence suggests that the slight pay disparity between Plaintiff and Sarbeng was due entirely to the Defendant's seniority system. Such disparities cannot constitute violations of the Equal Pay Act. *See* 29 U.S.C. § 206(d)(1) (specifically exempting pay differences based on seniority). As such, Defendant's Motion for Summary Judgment will be granted with respect to Count Five.

### C. *Defendant's Motion for Involuntary Dismissal with Prejudice*

On April 9, 2004, this Court Ordered Plaintiff to produce various medical records and other materials requested by Defendant. This Court issued substantially the same Order on July 21, 2004. In the Court's letter accompanying the April 9, 2004 Order, the Court reminded Plaintiff that "continued delay or an unwillingness to furnish Defendant with information or material legitimately requested during discovery, may result in dismissal of [Plaintiff's] case." To date, Plaintiff has not complied with the Court's directive to provide medical records and related materials appropriately requested during discovery. In a letter to the Court dated October 26, 2004, Plaintiff's counsel, Charles Kwarteng, indicated that Plaintiff Oguezuonu herself is responsible for the disregard of this Court's Orders. In light of the Plaintiff's utter disregard for this Court's rules, Defendant has moved to dismiss Plaintiff's claims with prejudice as a sanction.

■■ The sanction of dismissal is expressly authorized by Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure. District courts are to apply a four-part test for determining whether sanctions should be granted for discovery violations: "(1) whether the non-complying party acted in bad faith; (2) the amount of prejudice that noncompliance caused the adversary; (3) the need for deterrence of the particular sort of non-compliance; and (4) whether less drastic sanctions would have been effective." *Belk v. Charlotte–Mecklenburg Bd. of Educ.,* 269 F.3d 305 (4th Cir.2001). Each of these factors is satisfied in this case. Plaintiff has refused to comply with numerous orders of this Court, against the advice of her lawyer. The medical records at issue relate directly to essential elements of Plaintiff's claims. As a result of her obstructionism, this Court has previously assessed attorney's fees against her attorney. Still, Plaintiff is unmoved in her

refusal to comply with this Court's directives. Accordingly, this Court grants the Defendant's Motion for Involuntary Dismissal with Prejudice pursuant to Rule 37(b)(2).

## IV. *CONCLUSION*

For the foregoing reasons, the Defendant's Motion for Summary Judgment as to Counts One, Two, Three and Five of the Plaintiff's Complaint is GRANTED. In addition, the Defendant's Motion for Involuntary Dismissal with Prejudice is GRANTED. A separate Order accompanying this Memorandum Opinion will follow.