960 A.2d 1228

**Kathleen GASPER**

v.

**RUFFIN HOTEL CORPORATION OF MARYLAND, INC.**

No. 0968, Sept. Term, 2007.

Court of Special Appeals of Maryland.

Dec. 2, 2008.

212

Rebecca N. Strandberg, Silver Spring (Julie G. Martin-Korb, on brief, Rockville), for Appellant.

Alan L. Rupe, Wichita, KS (Kutak Rock, LLP, Jennifer M. Blunt, on brief, Washington, DC), for Appellee.

Panel: MEREDITH, ZARNOCH and * J. FREDERICK SHARER, JJ.

SHARER, J.

In her complaint, filed in the Circuit Court for Montgomery County, Kathleen Gasper, appellant, alleged employment discrimination, sexual harassment, retaliatory discharge, negligent hiring, and other related counts.[1] Appellees, defendants below, are Ruffin Hotel Corporation of Maryland ("Ruffin") and Imran Ahmed.[2]

In her timely appeal, Gasper raises three questions for our review, which, as rephrased, are:[3]

---

* Sharer, J. Frederick, participated in the hearing and conference of this case while an active member of this Court; he participated in the adoption of this opinion as a retired, specially assigned member of this Court.

1. Appellant's discrimination claims were brought under Md.Code, Art. 49B (1957) and the Montgomery County Code, § 27–9(a). Her negligent hiring and retaliation claims were brought on common law theories.

2. While Ahmed was a defendant below, he has not participated in this appeal.

3. In her opening brief, appellant's asks:

1. Whether the circuit court erred by instructing the jury that Gasper was required to prove that her protected activity was a "determining factor" for her retaliatory discharge, rather than a "motivating factor".

2. Whether the circuit court erred in excluding evidence showing that Ahmed had been previously terminated due to complaints of sexual harassment, assault and battery, and retaliation.

3. Whether the circuit court erred in dismissing Gasper's claim for negligent hiring and retention on preemption grounds.

## BACKGROUND

Because the issues raised by appellant are limited to questions of law, we need only recite a summary of those facts necessary to provide a context for our discussion of the legal issues. *See Whitney v. State,* 158 Md.App. 519, 524, 857 A.2d 625 (2004).

----

(1) Did the trial court err by instructing the jury that the plaintiff must prove her protected activity was a "determining [or determinant] factor" rather than a "motivating factor" for her retaliatory discharge?

(2) Is the evidence that a supervisor previously assaulted, sexually harassed and terminated female employees after they complained of assault and sexual harassment in the same workplace, and wanted to terminate other employees who had complained about him, admissible under Maryland Rule 5–404(b) in a civil case as to:

(A) motive/intent, a necessary element of a retaliation/discrimination cause of action, because it involves female employees who were retaliated against and who feared retaliation from the same supervisor for their complaints of assault and sexual harassment?

(B) knowledge/notice on the part of the employer who put that supervisor in charge of implementing a sexual harassment policy and workplace safety?

(C) Plaintiff's state of mind and credibility, when it is undisputed she had knowledge of the supervisor's conduct, and the Defendant put her state of mind and credibility at issue by claiming she was a "drama queen" and delayed reporting the assault and harassment?

3) Is there a negligent hire and retention cause of action separate from any discrimination statutes under the public policy or preventing criminal sexual assaults?

Kathleen Gasper is a resident of Montgomery Village, located in Montgomery County, Maryland. Ruffin Hotel Corporation owns and operates the Courtyard by Marriott Gaithersburg–Lakeforest ("Hotel") in Gaithersburg, Montgomery County. Gasper was employed by Ruffin at the Hotel as the Assistant General Manager from November 17, 2003, to March 15, 2005, when she was terminated. Imran Ahmed was hired as the General Manager of the Hotel on April 26, 2004, and was Gasper's immediate superior.

In her amended complaint, Gasper claimed (1) employment discrimination and sexual harassment, (2) retaliation, (3) negligent hiring and retention, and (4) intentional infliction of emotional distress. She sought to impose liability on Ruffin for the actions of its employees on *respondeat superior* theories.

Gasper's complaint is grounded on allegations that she was sexually harassed by other Ruffin employees, and subsequently retaliated against for reporting the sexual harassment.[4] Her amended complaint alleged, in pertinent part:

12. On January 17, 2005, while at the front desk of the [Hotel], Front Desk Manager James Bridges grabbed Plaintiff, pinned her against the wall and kissed her twice. Plaintiff was terrified and intimidated by Mr. Bridges' advances and show of force toward her. She was apprehensive about returning to work where she would have to confront him.

---

**4.** Gasper specifically alleges that Ruffin violated Montgomery County Code § 27–19(a)(1)(a), which states:

(a) A person must not because of the race, color, religious creed, ancestry, national origin, age, sex, marital status, sexual orientation, family responsibilities, or genetic status of any individual or disability of a qualified individual, or because of any reason that would not have been asserted but for the race, color, religious creed, ancestry, national origin, age, sex, marital status, disability, sexual orientation, family responsibilities, or genetic status:

(1) For an employer:

(A) fail or refuse to hire, fail to accept the services of, discharge any individual, or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment . . .

13. On January 19, 2005, Plaintiff complained to Defendant Ahmed of Mr. Bridges' actions. Defendant Ahmed discouraged Plaintiff from making any further complaints. On January 20, 2005 Defendant Ahmed told Plaintiff he planned to do nothing about her complaint of sexual harassment because Mr. Bridges had denied the inappropriate conduct. On January 24, 2005, Plaintiff submitted a written complaint to Defendant Ahmed recounting the events of January 17, 2005. Mr. Ahmed again discouraged her from making further complaints and threatened her with termination. Mr. Ahmed suggested that the corporate office was not taking Plaintiff's complaint seriously, either.

14. On or about February 3, 2005, Mr. Ahmed offered to hold a meeting between Plaintiff and Mr. Bridges, but refused to facilitate any resolution. Plaintiff did not attend the meeting because shortly before it, Mr. Ahmed told Plaintiff she would have to take the lead in resolving the problem, which she felt would be fruitless. In addition, Plaintiff was frightened by Mr. Bridges.

15. Later that same day, Mr. Bridges entered Plaintiff's office and tried to intimidate her. Plaintiff asked Mr. Bridges to leave, which resulted in Mr. Bridges shouting obscenities referring to Plaintiff near Mr. Ahmed's office.

16. On or about February 3, 2005, Mr. Ahmed announced he would be out of town from February 6 to February 11, 2005 and that both Mr. Bridges and Plaintiff would be in charge, as equals, effectively promoting Mr. Bridges. Plaintiff was fearful at the prospect of having to work with Mr. Bridges without a Supervisor to prevent further threats and inappropriate conduct.

17. Mr. Bridges was newly scheduled to work during Plaintiff's shift while Mr. Ahmed was out of town, which had never before occurred. After telling Mr. Ahmed over the phone that she felt threatened, Mr. Ahmed expressed frustration at Plaintiff's continued complaints and told Plaintiff to leave the hotel.

18. On or around February 10, 2005, Plaintiff lodged a criminal complaint for sexual assault against Mr. Bridges.

19. On February 10, 2005, Plaintiff mailed a letter to Phillip Ruffin, Owner and CEO of Defendant Ruffin describing both, the events of January 17, 2005 and Mr. Ahmed's response.

20. Upon information and belief, on or about February 14, 2005, Mr. Bridges was terminated. However, after that date, Mr. Bridges continued coming to work at the Courtyard.

21. On February 14, 2005, Mr. Ahmed informed Plaintiff of a new work schedule that he knew would make working at Courtyard difficult for Plaintiff. Mr. Ahmed was continuously hostile toward Plaintiff making communicating with him extremely difficult.

22. On February 16, 2005 Mr. Ahmed's superior, Bill Shea, called Plaintiff to discuss her complaints of sexual harassment and retaliation. Mr. Shea asked Plaintiff to recount the events surrounding the incident and told her that Mr. Bridges had been fired and there would be no more problems.

23. After this telephone conference, Defendant Ahmed's behavior became drastically worse than it had been immediately after the complaint. He would scream at her about failing to accomplish duties he never assigned. Defendant Ahmed began to curtail communication with Plaintiff and exclude Plaintiff from meetings attended by other department managers, systematically eliminating Plaintiff's both perceived and actual authority in the hotel.

24. On March 11, 2005, Mr. Ahmed told Plaintiff she would need to inform him before leaving the hotel property for lunch during her shift, something never required of her before.

25. On March 14, 2005, Plaintiff sent an e-mail to Mr. Shea (copying defendant Ahmed) that Defendant Ahmed was retaliating against her for her complaints of sexual harassment.

26. On March 15, 2005, Defendant Ahmed terminated Plaintiff's employment effective immediately.

On September 1, 2006, Ruffin filed a Motion to Dismiss Gasper's claim for negligent hiring and retention, arguing that the claim was preempted by anti-discrimination and workers' compensation statutes. The court, following a hearing, granted the motion on December 7, 2006. Trial, before a jury, commenced on May 14, 2007. On May 22, 2007, the jury returned a verdict in favor of Ruffin on all remaining counts.

Additional facts will be set forth as they become necessary to our discussion of the issues.

## 1. The court's instructions.

Appellant contends that the court erred in giving the following jury instruction regarding her retaliatory discharge claim:

Plaintiff alleges that she has been retaliated against by defendant because of her opposition to alleged harassing conduct. To prevail on her claim of retaliation, the plaintiff must prove by a preponderance of the evidence that (1) the plaintiff opposed practices that she reasonably and in good faith believed constituted unlawful harassment; (2) that she was discharged; and (3) the plaintiff's opposition to harassing conduct was a *determining factor* in the decision to discharge her.

(Emphasis added).

 Our review of a trial court's decision whether to give a requested jury instruction is conducted under an abuse of discretion standard. *Thompson v. State*, 393 Md. 291, 311, 901 A.2d 208 (2006) (citations omitted).

Gasper argues that the circuit court erroneously elevated her burden of proof by instructing the jury that her burden was to prove that the exercise of her protected activity—reporting sexual harassment-was the "determining factor" in her discharge. She posits that the correct standard of proof was whether her protected behavior was a "motivating factor" in the decision to discharge her.

Discussions of the standard for proving employment discrimination under Title VII of the United States Code are

instructive. In a plurality decision, in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), Justice Brennan, writing for the plurality, stated that

> when a plaintiff proves that her gender played a *motivating* part in an employment decision, the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account.

*Id.* at 258, 109 S.Ct. 1775 (emphasis added).

The "motivating factor" test was later ratified by a unanimous Supreme Court decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). In *Costa*, the Court concluded, "In order to obtain an instruction under [Title VII] § 2000e–2(m), a plaintiff need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that 'race, color, religion, sex, or national origin was a *motivating* factor for any employment practice.'" *Id.* at 101, 123 S.Ct. 2148 (emphasis added).

■ Ruffin argues that *Price Waterhouse* and *Costa* addressed only "mixed-motive" cases of discrimination, attempting to distinguish retaliation for protected conduct as a "single motive" claim. Ruffin's assertion that the proper standard is a "but for" test does not comport with Maryland law. Specifically, this Court has previously determined that the correct test for determining retaliatory discharge claims is whether the protected conduct was a "motivating factor" in the discharge. *See Magee v. DanSources Tech. Servs.*, 137 Md.App. 527, 565–66, 769 A.2d 231 (2001).

Ruffin, however, relies on *Molesworth v. Brandon*, 341 Md. 621, 672 A.2d 608 (1996), where the Court of Appeals reviewed the following instruction:

> To find that the Plaintiff was wrongfully discharged, you must find that her termination was motivated by sex discrimination. In other words, the Plaintiff was fired because she was a female.
>
> ... The Plaintiff must prove the Defendant intentionally discriminated [against] the Plaintiff. That is, but for the

Plaintiff's gender, the Defendant would not have made the decision not to continue the Plaintiff's employment.

*Id.* at 645, 672 A.2d 608.

The Court of Appeals noted that "[t]hese instructions adequately describe the burdens of proof in a sex discrimination case." *Id.* Ruffin cites this language for the proposition that "but for" is the correct standard of proof in a retaliatory discharge case. We rejected this same interpretation in *Magee, supra,* noting that while the *Molesworth* Court did approve the instruction recited above, it added a footnote to the phrase "but for":

> The plurality decision in *Price Waterhouse* [*v. Hopkins,* 490 U.S. 228, 240, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) ], ruled that "[t]o continue the words 'because of' as a colloquial short hand for 'but for causation,' is to misunderstand them."

> Title VII meant to condemn even those decisions based on a mixture of legitimate and illegitimate considerations. When, therefore, an employer considers both gender and legitimate factors at the time of making a decision, that decision was "because of" sex and the other, legitimate considerations—even if we may say later, in the context of litigation, that the decision would have been the same if gender had not been taken into account. *Id.* at 241, 109 S.Ct. 1775.

*Magee, supra,* 137 Md.App. at 566, 769 A.2d 231 (quoting *Molesworth, supra,* 341 Md. at 645 n. 8, 672 A.2d 608).

■ As we previously held in *Magee,* we find the following language from our opinion in *Brandon v. Molesworth,* 104 Md.App. 167, 655 A.2d 1292 (1995), *aff'd in part, rev'd in part,* 341 Md. 621, 672 A.2d 608 (1996), consistent with the plurality opinion in *Price Waterhouse,* and the Supreme Court's unanimous opinion in *Costa:*

> Although the employee bears the burden of persuasion that discrimination was "a motivating factor," the employee need

not prove that but for the discrimination she would not have been discharged.

*Brandon, supra,* 104 Md.App. at 191, 655 A.2d 1292.

Gasper is correct that "determining factor" is not the same as "motivating factor." Motivate has been defined as to "provide a motive for doing something." THE NEW OX-FORD DICTIONARY 1113 (2001). "Determine" has been defined as "be the decisive factor in" an action. *Id.* at 466, 655 A.2d 1292. Without wading into deeper semantic waters, we agree that the use of "determining" in place of "motivating" is confusing, and does not reflect the correct standard of proof.

■ We believe Maryland law to be settled that a plaintiff's burden is to prove that the exercise of his or her protected activity was a "motivating" factor in the discharge, thereby creating burden-shifting to the defendant. An instruction that imposes upon a plaintiff the burden of proving that the exercise of his or her protected activity was the "determining" factor in the discharge from employment is a misstatement of the law, and erroneous.

### 2. Evidence of Ahmed's previous termination

Gasper next argues that the trial court erred in excluding evidence of complaints made against Ahmed in 2002 that led to his termination by Hotel management.[5] Ruffin moved, *in limine,* to exclude the evidence, and the trial court, following a hearing, determined to delay a ruling until the close of Gasper's case. Ruling from the bench, the court stated, *inter alia:*

> So that takes us to number one, which was Mr. Ahmed's 2002 termination from Courtyard. And I'll just tell you probably where I am on that is that I would reserve on my ruling on that to see how the evidence plays out. Preclude either side from mentioning it. Of course the defense wouldn't. The plaintiff in opening statement. And then we'll see where the evidence goes in this case.

---

5. Ahmed was rehired by the Hotel in 2004.

It's the only way I think I can adequately weigh the probative value and the prejudice to the defendant. I don't believe I can do it now because I don't know specifically what role he played. There's a lot of facts that are in dispute. And it certainly has the potential for being relevant for intent or motive as you pointed out in your brief. And I understand that. And in the area of retaliation. But I don't want to make a blanket ruling at this point because, as I said, I need to hear it and then make the determination.

At the conclusion of Gasper's case in chief, the court ruled on the motion, stating in pertinent part:

The Court has listened intently to all the evidence in this case, and the plaintiff wishes to bring in incidents of sexual harassment or allegations of it in 2002.

First of all, I would, I find, as a matter of law in this case, or I find a determination in this case that those incidents in 2002 would be irrelevant. Under 5–401, " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

I find that the entire proffer and all of the incidents, even if true, even if exactly true—and there, again, they haven't been tried, we're talking about prior acts—I find, would be irrelevant. I find it would be irrelevant whether or not Mr. Ahmed was the perpetrator of sexual harassment in the workplace at the very same location in 2002.

I also would find that if someone were to disagree with me that it would be relevant under 5–403, I find that the evidence should be excluded because any probative value it would have is substantially outweighed by the danger of unfair prejudice. The conduct that's being complained of is the identical conduct perpetrated by Mr. Bridges. I find that there would be extreme danger of unfair prejudice. I think it would also be a confusion of the issues, which is also under 5–403, because the jury would have to tangle and

untangle the incidents that happened in 2002 and somehow try and sort that out and see what relevance they have to this 2005 incident with the plaintiff in this case at bar. I also find the jury would be somewhat misled. I am not ruling that it would be a waste of time because the time is not something the Court concerns itself with; it takes all the time it would need in the case.

So, the only way I believe—also, under 5–404(b), it indicates, "Evidence of other," and this would be, not a "crime" because he hasn't been found guilty of a crime, it would be "wrongs or acts"—they're "not admissible to prove character of a person in order to show action in conformity therewith." And that's exactly what I find these episodes would be, coming in; that they would be offered to prejudice the home office, the only defendant in this case, through its employee, Mr. Ahmed.

There are exceptions under "motive, opportunity, intent, preparation." The Defense indicates motive and intent. I don't believe that they are issues, and I don't believe that they would properly show motive/intent in this particular case. The fact that he did or did not commit an offense in 2002 has nothing to do with his motive or his intent that I find in this particular case.

■ A trial court's decision to admit or exclude evidence will not be disturbed in the absence of an abuse of discretion. *Bittinger v. CSX Transp. Inc.*, 176 Md.App. 262, 273, 932 A.2d 1243, *cert. denied*, 402 Md. 356, 936 A.2d 852 (2007).

Gasper asserts in her brief that the evidence she sought to admit at trial would have shown:

(1) motive or intent, and corresponding malice, [ (2) ] knowledge or notice to the employer, especially with regard to an employer's duty to provide a safe workplace and effective sexual harassment policy, and [ (3) ] to explain Gasper's emotional distress, why she waited to report the harassment, and for credibility once the Hotel put her credibility and her emotional state at issue.

Gasper argues that because the evidence would have shown motive or intent, a necessary element of her retaliatory discharge claim, it was admissible as prior bad act evidence under Md. Rule 5–404(b).[6] According to Gasper's theory of the case, Ahmed's previous sexual harassment violations, and resulting termination, were relevant to show that she was fired for submitting a sexual harassment complaint. As we noted, the trial court found the evidence to be both irrelevant and more prejudicial and/or confusing than probative.

## Prejudice vs. Probative Value

■ We first address the trial court's ruling that the evidence was more prejudicial and/or confusing than probative. Maryland Rule 5–403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion or the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The trial court reasoned that the alleged harassment suffered by Gasper came at the hands of a front desk employee, Bridges, not Ahmed. The court further noted that Ahmed's past conduct, which Gasper sought to admit, was "identical" to the alleged conduct by Bridges. The court determined that the evidence would only lead the jury to conclude that, because Ahmed had committed these violations in the past, Bridges' conduct would be imputed to Ruffin, to Ruffin's prejudice. As the trial court correctly noted, Md. Rule 5–404(b) prohibits prior acts evidence to "prove character of a person to show action in conformity therewith." Further, the trial court determined that the evidence might well confuse

---

6. Md. Rule 5–404(b) states:

**(b) Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident.

the jury, as they would "have to tangle and untangle the incidents that happened in 2002 and somehow try and sort that out and see what relevance they have to this 2005 incident."

We reiterate that we shall not disturb a trial court's decision to admit or exclude evidence absent an abuse of discretion. *See Phoenix Servs. Ltd. Partnership v. Johns Hopkins Hosp.,* 167 Md.App. 327, 408, 892 A.2d 1185, *cert. denied,* 393 Md. 244, 900 A.2d 750 (2006). The trial court's decision was well-reasoned and applied to evidence presented by Gasper in her case in chief.

We find no abuse of discretion in the trial court's ruling. Because we affirm the trial court's determination that the evidence was inadmissible under Md. Rule 5–403, we need not address Gasper's other theories of admissibility.

### 3. Preemption

Finally, Gasper argues that the trial court erred in dismissing the third count of her complaint, alleging negligent hiring and retention of Ahmed by Ruffin.

■ We review a trial court's motion to dismiss *de novo.* In *Adamson v. Corr. Med. Servs.,* 359 Md. 238, 246, 753 A.2d 501 (2000), the Court of Appeals explained the standard of review:

In reviewing the underlying grant of a motion to dismiss, we must assume the truth of the well-pleaded factual allegations of the complaint, including the reasonable inferences that may be drawn from those allegations. We have noted that "the facts comprising the cause of action must be pleaded with sufficient specificity. Bald assertions and conclusory statements by the pleader will not suffice." In the end, "[d]ismissal is proper only if the alleged facts and permissible inferences, so viewed, would, if proven, nonetheless fail to afford relief to the plaintiff." In sum, because we must deem the facts to be true, our task is confined to determining whether the trial court was legally correct in its

decision to dismiss. With the appellate review standard in mind, we consider the legal issue in this case.

*Id.* (citations omitted).

Ruffin argues that Gasper's negligent hiring and retention claim is barred by either, or both, of two alternate theories of preemption. First, Ruffin argues that the claim is preempted by the Maryland Human Rights Act, pertinent sections of the Montgomery County Code, and federal sexual harassment laws.[7] In the alternative, Ruffin contends that the Maryland Worker's Compensation Act ("MWCA") preempts the negligent hiring and retention claim.

It is not clear if the court's dismissal of the negligent hiring/retention count was grounded on one of those theories of preemption, or both. Ruling from the bench, the court stated, *inter alia:*

> Okay. It is a very, very interesting and complex issue, and I don't treat it with the disdain that I think the defendants treat it with in their response. I think that there are substantial arguments that could be made and have been made on the plaintiff's behalf, with respect to whether or not she ought to be able to bring this action.

> But having had a chance to read the memos, to read the pleadings and to read the relevant cases, for the reasons set out in the defendant's memorandum, as well as for the reasons that I discussed here with counsel in court, I am persuaded in this instance that the defendants are correct and that the motion to dismiss should properly lie as to Count 3, the negligent hiring and retention. But otherwise, I'll let the amended complaint stand.

Because it is unclear under which theory the trial court based its decision to grant the motion to dismiss, we shall review both: whether Gasper's claim for negligent hiring and retention is preempted by the various state and local sexual harassment laws, or the MWCA.

---

7. Gasper's complaint did not implicate federal law.

## A. Preemption under the Human Rights Act and Montgomery County Code

█ Gasper's claim for negligent hiring and retention is based on her allegation that Ruffin hired Ahmed despite knowing that "it was foreseeable that he would retaliate against employees complaining of assault." She posits that Ahmed's earlier conduct, resulting in his discharge by Ruffin, and Ruffin's reemployment of him is tantamount to Ruffin's having "knowingly hired the fox to guard the henhouse" and that Ruffin "intentionally retained him to clean house of any hens who complained." [8]

Ruffin claims that statutory discrimination and retaliation laws preempt such a complaint. Specifically, Ruffin cites *Watson v. Peoples Sec. Life Ins. Co.*, 322 Md. 467, 588 A.2d 760 (1991), where the Court of Appeals stated:

The source of the policy against hostile environment sexual discrimination is statutory, and exclusively statutory. Those statutes provide the remedies for their violation. Thus the abusive discharge tort would not reach [defendant's] retaliation even if [plaintiff's] suit against it is interpreted to be based on [defendant's] permitting a "hostile environment" in which [the harasser] committed the assault.

*Id.* at 480, 588 A.2d 760 (citations omitted).

Gasper contends, however, that Ruffin misreads *Watson,* which, she argues, actually supports her position. Gasper reasons that her case is not based exclusively on the discrimination and retaliation outlawed by the Human Rights Act and the anti-discrimination laws of the Montgomery Code. Rather, she alleges abusive discharge for having reported *assault and*

---

8. Gasper's theory relies on evidence showing Ruffin's awareness of Ahmed's alleged prior acts of sexual harassment and illegal retaliation against workers who reported harassment. While we have held that the trial court properly excluded this evidence at trial, we are required to assume that the facts proffered by Gasper in her complaint are true when reviewing the trial court's grant of Ruffin's motion to dismiss. *See Adamson, supra,* 359 Md. at 246, 753 A.2d 501.

*battery,* which is outlawed by public policy separate and distinct from state and county anti-sexual harassment laws.

This distinction was explained by the Court of Appeals in *Watson, supra.* In *Watson,* the employer/defendant, Peoples Insurance Co., argued that the common law action for abusive discharge is unavailable in a case of allegations of sexual discrimination, because of the existence of remedies under federal and state sexual discrimination laws. Watson alleged assault and battery at the hands of a co-worker. Dismissing People's argument, the Court of Appeals distinguished the public policies preventing sexual discrimination in the work place from the policy prohibiting assault and battery:

> Essentially Peoples seeks a preemption result. But the fact that assault and battery in the instant case arise out of sexual harassment in the workplace does not end the inquiry. Long antedating Title VII and the Act, public policy, as manifested in civil and criminal law, provided sanctions against attempted and consummated harmful and offensive touching of the person, whether or not sexually motivated. Had Title VII or the Act never been enacted, a clear mandate of public policy still supported Watson's recourse to legal redress against Strausser under the circumstances here. Where right and remedy are part of the same statute which is the sole source of the public policy opposing the discharge, *Makovi* and *Chappell* dictate the result that the tort of abusive discharge, by its nature, does not lie. In the instant matter there are multiple sources of public policy, some within and some without Title VII and the Act. By including prior public policy against sexual assaults, the antidiscrimination statutes reinforce that policy; they do not supersede it.

*Watson, supra,* 322 Md. at 485–86, 588 A.2d 760 (distinguishing *Makovi v. Sherwin–Williams Co.,* 316 Md. 603, 561 A.2d 179 (1989)(holding that abusive discharge claim did not lie for employee who alleged that she was discharged because of her pregnancy; sex discrimination statutes created both right and remedy for alleged public policy violation) and *Chappell v. So. Md. Hosp., Inc.,* 320 Md. 483, 578 A.2d 766 (1990)(personnel

director, an at-will employee, did not have cause of action against private hospital for abusive discharge where director had available remedies under Maryland Fair Employment Practices Law and the Civil Rights Act of 1964 for discharge allegedly based on director's attempts to remedy alleged illegal discriminatory practices and violations of public policies at the hospital.)).

 While Gasper's complaint contained allegations of sexual harassment, it also alleged retaliation in response to her attempts to seek legal redress for assault and battery. We agree with Ruffin's assertion that Gasper seeks two remedies for the same wrong. Nonetheless, she seeks to enforce two distinct public policies. On the one hand, it is contrary to public policy to retaliate against an employee who reports sexual harassment. On the other, it is also contrary to public policy for an employer to retaliate against an employee in response to the employee's attempt to seek legal redress for assault and battery. We apply the Court's observation in *Watson*—that, had the Human Rights Act and Title 27 of the Montgomery Code never been enacted, public policy still supports her legal redress for alleged assault and battery.

To the extent that the trial court rested its dismissal of Gasper's claim of negligent hiring and retention on preemption by the Human Rights Act and the Montgomery County Code, we are not persuaded.

### B. Preemption under the Maryland Workers' Compensation Act

Alternatively, Ruffin maintains that the MWCA "provides the exclusive remedy for employee injuries arising out of and in the course of employment." Ruffin's theory below, and on appeal, is that Gasper's claim is for injury arising out of her employment, and is therefore a remedy exclusively preempted by the MWCA.[9]

---

**9.** Md.Code, Labor and Employment, § 9–101 et seq. (1999 Repl.Vol., 2007 Supp.).

Gasper does not argue that her injury falls outside the scope of the MWCA. She cites § 9–509(d) of the act, which provides:

If a covered employee is injured or killed as a result of the deliberate intent of the employer to injure or kill the covered employee, the covered employee or, in the case of death, a surviving spouse, child or dependant of the covered employee may:

(1) bring a claim for compensation under this title; or

(2) bring an action for damages against the employer.

Gasper contends that her complaint was for an intentional tort, because she "was not injured as a[ ] result of an 'accident,'" but "[i]nstead, the Hotel intentionally retained Ahmed to terminate Gasper and thus put an end to her complaints."

Therefore, we are reminded that we review a motion to dismiss *de novo*, for legal error. "In the end, 'dismissal is proper only if the alleged facts and permissible inferences, so viewed, would, if proven, nontheless fail to afford relief to the plaintiff.'" *Adamson, supra,* at 246, 753 A.2d 501 (quoting *Bobo v. State,* 346 Md. 706, 708–09, 697 A.2d 1371 (1997)). In that context, we review Gasper's amended complaint.

█ We disagree with Gasper's characterization of Count III of her amended complaint as an allegation of an intentional tort. The sub-heading setting Count III in the amended complaint states: "COUNT III—*NEGLIGENT* HIRING AND RETENTION AGAINST DEFENDANT RUFFIN." (Emphasis added). Gasper argues that while the count is labeled as a complaint in negligence, "the conduct alleged was intentionally wrongful, which logically subsumes negligence." We disagree. Intentional torts are separate offenses from torts resulting from negligence. Otherwise, the very MWCA provision Gasper relies upon would not be necessary. And, while Gasper alleges intentional conduct in support of her negligence claim, the claim clearly sounds in negligence.

■ While we agree with Ruffin's assertion that Count III of Gasper's amended complaint is a complaint in negligence, not intentional conduct, we cannot agree that Gasper's exclusive remedy is found in a workers' compensation claim. Ruffin has referred us to no Maryland authority, and we have found none, to support its claim of preemption under the MWCA. Ruffin argues that

> [Appellant's] claim for negligent hiring and retention is preempted by the MCWA. Count III is entitled *"Negligent Hiring and Retention"* and is exclusively a negligence claim. *See Henley v. Prince George's County,* 60 Md.App. 24, 36, 479 A.2d 1375 (1984).

We find nothing in *Henley* that remotely supports Ruffin's argument of MWCA preemption. The plaintiff's claim in *Henley* was a straightforward assertion of liability on the theory of negligent hiring—that the defendant hired a person with a known criminal record who, in the course of his employment, murdered their son. Speaking for this Court, Judge Bishop wrote:

> Maryland has recognized the employer's obligation to the public to use due care in selecting and retaining only competent and carful employees. Unlike respondeat superior, which holds the employer vicariously liable for certain employee torts, this cause of action is based on the employer's breach of his duty of care, which is nondelegable.

*Id., aff'd in part, rev'd in part,* 305 Md. 320, 503 A.2d 1333 (1986).

■ This Court then reiterated the five elements comprising a plaintiff's burden of proof in a negligent hiring claim, observing that "[w]e see no reason to depart from general tort principles by circumscribing the extent of an employer's duty to such" foreseeable victims. Throughout the discussion of the elements of a claim for negligent hiring, the Court relied exclusively on "general tort principles" as set out in prevailing Maryland case law and in other sources, citing, *inter alia,* Restatement Second of Agency, § 213, comment (d) (1958).

We find no reason to abandon those general tort principles in favor of preemption under the MWCA.[10]

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED;CASE REMANDED FOR NEW TRIAL.**

**COSTS ASSESSED TO APPELLEE.**

10. Subsequent to oral argument in this appeal, counsel for Ruffin sent to the court, in letter form "supplemental authorities." Counsel for Gasper, likewise in letter form, objected to such filing. Because appellee's filing was without leave of this Court, we have chosen to disregard it.