17 A.3d 676

**RUFFIN HOTEL CORPORATION OF MARYLAND, INC.**

v.

**Kathleen GASPER.**

**No. 24, Sept. Term, 2009.**

Court of Appeals of Maryland.

March 21, 2011.

Reconsideration Denied May 20, 2011.

Alan L. Rupe (Kutak Rock, LLP, Wichita, Kansas; Jennifer M. Blunt of Kutak Roll, LLP, Washington, D.C.), on brief, for petitioner/cross-respondent.

Rebecca N. Strandberg (Rebecca Strandberg & Associates, PA, Silver Spring, MD), on brief, for respondent/cross-petitioner.

Julie Glass Martin–Korb, Rockville, MD, for respondent/cross-petitioner.

C. Matthew Hill, Esq., Murnaghan Appellate Advocacy Fellow, Public Justice Center, Baltimore, MD, for Amici Curiae brief of Public Justice Center, Maryland Employment Lawyers Association, and Metropolitan Washington Employment Lawyers Association.

Argued before BELL, C.J., HARRELL, GREENE, MURPHY, ADKINS, BARBERA, JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

MURPHY, J.

From November 17, 2003 to March 15, 2005, Kathleen Gasper, Respondent/Cross–Petitioner (Respondent), was employed by Ruffin Hotel Corporation of Maryland, Inc., Peti-

tioner/Cross–Respondent (Petitioner). The case at bar stems from the Petitioner's decision to terminate the Respondent's employment, and is now before this Court as a result of proceedings in the Circuit Court for Montgomery County and in the Court of Special Appeals. In *Gasper v. Ruffin Hotel Corporation of Maryland, Inc.,* 183 Md.App. 211, 960 A.2d 1228 (2008), the Court of Special Appeals held that (1) the Respondent is entitled to a new trial on her "retaliatory discharge" claim on the ground that the Circuit Court delivered an erroneous jury instruction, (2) the Circuit Court erred in dismissing the Respondent's "negligent hiring and retention" ("negligent hiring/retention") claim, and (3) the Circuit Court did not abuse its discretion in granting the Petitioner's motion to exclude evidence of "prior bad acts" allegedly committed by the employee of the Petitioner who made the decision to terminate the Respondent's employment.

As neither party was entirely satisfied with the opinion of the Court of Special Appeals, both requested that this Court issue a Writ of Certiorari.

The Petitioner requests that we answer three questions:

(1) In retaliatory discharge claims brought under Maryland law, should juries be instructed that the plaintiff must prove that retaliation was a "determining factor," as opposed to a "motivating factor," in her termination?

(2) Is a negligent hiring and retention claim based upon alleged sexual harassment and a subsequent allegedly retaliatory discharge preempted by Maryland anti-discrimination statutes?

(3) Does the Maryland Workers' Compensation Act preempt a negligent hiring and retention claim brought by an employee against her employer[?]

The Respondent's Cross–Petition presents us with a fourth question:

Should evidence of the prior bad acts of a supervisor who assaulted, sexually harassed, and retaliated against other employees be admissible under Maryland Rule 5–404(b) in a civil case to show:

(A) motive/intent, a necessary element of a retaliation/discrimination cause of action? or

(B) knowledge/notice on the part of the employer, a necessary element of a negligent hiring/retention cause of action?

We granted both the Petition and the Cross–Petition. 408 Md. 149, 968 A.2d 1064 (2009). For the reasons that follow, we answer "no" to each of the Petitioner's questions. Rather than answer "yes" or "no" to the Respondent's question, because we are affirming the holdings that the Respondent is entitled to a new trial on her "retaliatory discharge" and negligent hiring/ retention claims, we shall discuss how the "prior bad acts evidence" issues should be resolved on remand.

## Background

The Respondent had initially sought an award of damages from both the Petitioner and Irman Ahmed, who made the decision to terminate the Petitioner's employment. The Petitioner's five count "AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL" included the following assertions:

### COUNT III—NEGLIGENT HIRING AND RETENTION AGAINST DEFENDANT RUFFIN

\* \* \*

57. Prior to Mr. Ahmed's termination in September 2002, many employees had complained of Mr. Ahmed's abusive behavior including allegations of assault, battery, discrimination, sexual harassment and fear of retaliation.

57A. When considering Defendant Ahmed's rehire, it was foreseeable that he would retaliate against employees complaining of assault and not protect employees from assault or battery since, upon information and belief, he had been accused of, and terminated for such conduct. It was foreseeable that Defendant Ahmed would not prevent as-

saults and batteries upon female employees and would retaliate against employees who reported such conduct.

\* \* \*

59. Defendant Ruffin had actual knowledge of Defendant Ahmed's retaliation. Plaintiff informed Mr. Shea that Defendant Ahmed was retaliating against her for her complaint yet Defendant Ruffin retained Defendant Ahmed in a supervisory and management position over Plaintiff and put him in charge of investigating Plaintiff's complaint of assault, battery and sexual harassment and discriminating.

\* \* \*

63. Defendant Ruffin breached its duty by rehiring a General Manager with, upon information and belief, a proven history of sexual harassment, assault and battery, sexual discrimination and placing him in a supervisory role, responsible for addressing sexual harassment complaints.

64. Defendant Ruffin further breached its duty by allowing Defendant Ahmed to retaliate against Plaintiff after Defendant Ruffin became aware of the complaints and the retaliatory conduct. Upon Plaintiff's notifying Defendant Ruffin of the extreme and outrageous conduct by Mr. Ahmed, Defendant Ruffin intentionally permitted Ahmed to act extremely and outrageously toward Plaintiff.

\* \* \*

## COUNT IV—INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY DEFENDANT AHMED

\* \* \*

68. Defendant Ahmed's conduct toward Plaintiff was both intentional and reckless.

69. When Defendant Ahmed was rehired in 2004, he approached Plaintiff because he wanted to terminate people who had complained of Defendant Ahmed's improper conduct. Plaintiff was on notice that Mr. Ahmed would terminate someone for complaining of sexual harassment, assault, battery and discrimination.

70. After Plaintiff came to Defendant Ahmed for help, he humiliated her by rejecting her story and then by telling her that the corporate office was not taking her complaint seriously.

71. Defendant Ahmed placed Plaintiff in a position where he knew she would be exposed to a threatening and intimidating atmosphere. Defendant Ahmed refused to intervene after Plaintiff informed him of the inappropriate conduct. Defendant Ahmed allowed Mr. Bridges to enter Plaintiff's office and further harass and intimidate her with obscenities. At a critical point after Plaintiff's complaint, when she was extremely vulnerable, Defendant Ahmed left town creating an atmosphere of fear and intimidation at the hotel, where there was no supervisor to intervene on Plaintiff's behalf.

74. Defendant Ahmed systematically tried to force Plaintiff out of her job. He turned her co-workers against her and unfairly criticized her job performance. As a result of Mr. Bridges' termination, Defendant Ahmed threatened to rearrange Plaintiff's schedule to conflict directly with her other work and family responsibilities. The schedule change would also change the scope of Plaintiff's job duties.

\*　　\*　　\*

WHEREFORE, Plaintiff Kathleen Gasper demands judgment against Defendant Irman Ahmed for Ninety–Four Thousand Six Hundred forty-five and ninety-nine centers ($94,645.99) in lost wages, Five Hundred Thousand Dollars ($500,000) in compensatory damages, and Five Hundred Thousand Dollars ($500,000) in punitive damages, with interest, costs and attorney's fees.

After the Circuit Court granted the Petitioner's motion to dismiss the Respondent's negligent hiring/retention claim, the Respondent filed a three count "SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL," in which— although Mr. Ahmed was identified as a defendant—the Re-

spondent sought damages only from the Petitioner.[1] The Second Amended Complaint included the following assertions:

7. Defendant Ruffin received multiple Complaints that Defendant Ahmed was assaulting, committing batteries against and sexually harassing his employees and they were afraid he would retaliate against them for filing such [ ] complaints.

7A. Upon information and belief, in September 2002, Defendant Ahmed was terminated from his position as General Manager at Courtyard for sexually harassing subordinates and coworkers.

8. Defendant Ahmed was re-hired as General Manager of Courtyard on April 26, 2004, and is currently employed in that position.

9. Upon his rehire, Defendant Ahmed asked [the Respondent] to identify signatures on a letter complaining of Defendant Ahmed's sexual harassment, because he intended to terminate those employees.

10. Having previously worked for Defendant, James Bridges, a close friend or associate to Defendant Ahmed, was rehired by Defendant Ruffin on May 10, 2004.

11. After Defendant Ahmed was rehired, he told [the Respondent] that other employees had filed complaints against him for sexual harassment and unwelcome touching and that he wanted to terminate those employees.

12. On January 17, 2005, while at the front desk of the Courtyard, Front Desk Manager James Bridges grabbed [the Respondent], pinned her against the wall and kissed her twice. [The Respondent] was terrified and intimidated by Mr. Bridges' advances and show of force toward her. She was apprehensive about returning to work where she would have to confront him.

13. On January 19, 2005, [the Respondent] complained to Defendant Ahmed of Mr. Bridges' actions. Defendant

---

1. The Respondent's Second Amended Complaint did not include an "intentional infliction" claim.

Ahmed discouraged [the Respondent] from making any further complaints. On January 20, 2005, Defendant Ahmed told Plaintiff he planned to do nothing about her complaint of sexual harassment because Mr. Bridges had denied the inappropriate conduct. On January 24, 2005, Plaintiff submitted a written complaint to Defendant Ahmed recounting the events of January 17, 2005. Mr. Ahmed again discouraged her from making further complaints and threatened her with termination. Mr. Ahmed suggested that the corporate office was not taking [the Respondent's] complaint seriously, either.

\* \* \*

19. On February 10, 2005, Plaintiff mailed a letter to Phillip Ruffin, Owner and CEO of Defendant Ruffin describing both[ ] the events of January 17, 2005 and Mr. Ahmed's response.

\* \* \*

25. On March 14, 2005, Plaintiff sent an email to Mr. Shea (copying Defendant Ahmed) that Defendant Ahmed was retaliating against her for her complaints of sexual harassment.

26. On March 15, 2005, Defendant Ahmed terminated Plaintiff's employment effective immediately.

27. Upon information and belief Mr. Bridges has been rehired by Defendants.

25.. Defendant Ahmed has given conflicting reasons for Plaintiff's discharge to both the Maryland Department of Labor Licensing and Regulation (herein after DLLR) and the Montgomery County Office of Human Rights.

\* \* \*

## COUNT I—EMPLOYMENT DISCRIMINATION AND SEXUAL HARASSMENT BY DEFENDANT RUFFIN

\* \* \*

38. Defendant Ahmed refused to alleviate the impact of Mr. Bridges' presence or conduct. Defendant Ahmed re-

fused to facilitate any resolution to the problem. After being notified of the fear and intimidation experienced by Plaintiff, Defendant Ahmed allowed Mr. Bridges to confront Plaintiff in her office where he further intimidated her.

39. Defendant Ahmed responded to Plaintiff's verbal and written complaint with discouragement and threats. Defendant Ahmed disregarded the complaints, based solely on Mr. Bridges' denial.

\* \* \*

## COUNT II—RETALIATION BY DEFENDANT RUFFIN

\* \* \*

46. Plaintiff lodged a written complaint of sexual harassment to three supervisory levels; her immediate supervisor, Defendant Ahmed, his supervisor, Mr. Shea, and the owner and CEO of Defendant Ruffin, Mr. Ruffin. Under Montgomery County Code Part II § 27–19(c), Plaintiff is protected from retaliation for complaining of sexual harassment.

\* \* \*

48. Plaintiff's adverse action and ultimate termination by Defendants Ruffin and Ahmed were in direct retaliation for her complaints of sexual harassment and pursuing legal redress against James Bridges for sexual assault. Defendant Ahmed warned Plaintiff that if she continued to pursue her sexual harassment complaint, she would be fired.

\* \* \*

## COUNT III—RESPONDEAT SUPERIOR BY DEFENDANT RUFFIN

\* \* \*

55. The above described acts of Mr. Ahmed were committed within the scope of his employment with Defendant Ruffin in that he committed them on duty, inside of Defendant Ruffin's premises, at the instruction of Defendant Ruffin, and in furtherance of Defendant Ruffin's interests.

56. Defendant Ruffin authorized those acts by placing Defendant Ahmed in a supervisory position with authority over Plaintiff.

57. Defendant Ruffin ratified those actions by not immediately suspending or dismissing him and allowing him to continue them, once Defendant Ruffin became aware of his actions.

In the parties Joint Pre–Trial Statement filed pursuant to Md. Rule 2–504.2, the Petitioner stated:

### *Defendant's contentions*

Plaintiff was not terminated in retaliation for engaging in protected activity. Plaintiff was terminated by Ahmed on March 15, 2005 because of her attitude which created a hostile working environment, her insubordination towards him, and complaints Ahmed received from the Courtyard's staff regarding Plaintiff. Specifically, Ahmed predicated his decision to terminate upon two separate complaints from staff: (1) in a letter to Defendant Ruffin's corporate headquarters dated February 17, 2005, the Courtyard's Housekeeping employees complained they feared Plaintiff because she was rude and treated them " 'like dog[s]' " and (2) Randolph and Brunn, both management-level employees at the Courtyard, complained of Plaintiff isolated herself in her office, frequently slamming her office door, speaking to employees rudely, and generally causing the Courtyard's Guest Satisfaction Scores to suffer. Plaintiff's volatile attitude hampered the Courtyard's attempt to protect its Marriott flag by getting out of the "red zone." Finally, Plaintiff's hostility and insubordination towards Ahmed is demonstrated through a flurry of hostile e-mails in late February and early March 2005.

During the jury trial, the Respondent presented evidence that was consistent with the above quoted assertions set forth in her Amended Complaint, while the Petitioner presented evidence that was consistent with the above quoted contentions made in the Pre–Trial Statement.

Before "resting" the Respondent's case-in-chief, the Respondent's counsel requested that the Circuit Court "reverse" its *in limine* ruling that excluded evidence of what was referred to as "the 2002 incident," as a result of which Mr. Ahmed's employment was terminated. The Circuit Court's on-the-record response to this request included the following analysis:

The Court has listened intently to all of the evidence in this case, and the plaintiff wishes to bring in incidents of sexual harassment or allegations of it in 2002.

First of all, I would, I find, as a matter of law in this case, or I find a determination in this case that those incidents in 2002 would be irrelevant. Under 5–401, " 'Relevant Evidence' means evidence having any tendency to make the determination of the action more probable or less probable than it would be without the evidence."

I find that the entire proffer and all of the incidents, even if true, even if exactly true—and there, again, they haven't been tried, we're talking about prior acts—I find, would be irrelevant. I find it would be irrelevant whether or not Mr. Ahmed was the perpetrator of sexual harassment in the workplace at the very same location in 2002.

I also would find that if someone were to disagree with me that it would be relevant[,] under 5–403, I find that the evidence should be excluded because any probative value it would have is substantially outweighed by the danger of unfair prejudice. The conduct that's being complained of is the identical conduct perpetrated by Mr. Bridges. I find that there would be extreme danger of unfair prejudice.

I think it would also be a confusion of the issues, which is also under 5–403, because the jury would have to tangle and untangle the incidents that happened in 2002 and somehow try and sort that out and see what relevance they have to this 2005 incident with the plaintiff in the case at bar. I also find the jury would be somewhat misled. I am not ruling that it would be a waste of time because the time is not something the Court concerns itself with; it takes all the time that it would need in the case.

So, the only way I believe—also, under 5–404(b), it indicates, "Evidence of other," and this would be, not a "crime" because he hasn't been found guilty of a crime, it would be "wrongs or acts"—they're "not admissible to prove character of a person in order to show action in conformity therewith." And that's exactly what I find these episodes would be, coming in; that they would be offered to prejudice the home office, the only defendant in this case, through its employee, Mr. Ahmed.

There are exceptions under "motive, opportunity, intent, preparation." The Defense indicates motive and intent. I don't believe that they are issues, and I don't believe that they would properly show motive/intent in this particular case. The fact that he did or did not commit an offense in 2002 has nothing to do with his motive or his intent that I find in this particular case.

Only the Respondent's "retaliatory discharge" claim was submitted to the jury, which received the following instruction:

Plaintiff alleges that she has been retaliated against by defendant because of her opposition to alleged harassing conduct. To prevail on her claim of retaliation, the plaintiff must prove by a preponderance of the evidence that (1) the plaintiff opposed practices that she reasonably and in good faith believed constituted unlawful harassment; (2) that she was discharged; and (3) the plaintiff's opposition to harassing conduct was a *determining factor* in the decision to discharge her.

(Emphasis added). The Respondent noted an exception to this instruction, arguing that she was entitled to a verdict in her favor if the jurors were persuaded that her opposition to unlawfully harassing conduct was a "motivating factor" in the decision to discharge her.

The jury was instructed to record its verdict on a "VERDICT SHEET" that included the following question and directions:

1. Did Plaintiff prove, by a preponderance of the evidence, her claim of unlawful retaliation? (check one)

Yes ___

No ___

(If you responded "No" to Question 1, stop now and inform the Courtroom Bailiff that you have reached a verdict. If you answered "yes" to Question 1, proceed to Question 2.)

The jury answered "No" to Question 1. After the Circuit Court entered a final judgment in favor of the Petitioner, the Respondent noted an appeal to the Court of Special Appeals.

In the Court of Special Appeals, the Respondent argued that she was entitled to a new trial on her "retaliatory discharge" and negligent retention/hiring claims on the grounds that the Circuit Court should not have (1) instructed the jury that the plaintiff asserting a "retaliatory discharge" claim is required to prove that his or her "opposition to harassing conduct was a *determining factor* in the decision to discharge [him or] her," (2) dismissed the negligent hiring/retention claim, and (3) excluded evidence of "other bad acts" allegedly committed by Mr. Ahmed. As stated above, the Court of Special Appeals agreed with the Respondent's first two arguments, but rejected the third.

## Discussion

### I

 "We have held that the standard of review for jury instructions is that so long as the law is fairly covered by the jury instructions, reviewing courts should not disturb them." *Farley v. Allstate Ins. Co.*, 355 Md. 34, 46, 733 A.2d 1014, 1020 (1999) (citing *Jacobson v. Julian*, 246 Md. 549, 561, 229 A.2d 108, 116 (1967)). *See also Boone v. American Mfrs. Mut. Ins. Co.*, 150 Md.App. 201, 227, 819 A.2d 1099, 1113 (2003). If, however, the instructions are "ambiguous, misleading or confusing" to jurors, those instructions will result in reversal and a remand for a new trial. *See Battle v. State*, 287 Md. 675, 684–85, 414 A.2d 1266, 1271 (1980) (quoting *Midgett v. State*, 216 Md. 26, 41, 139 A.2d 209, 217 (1958)). On the other hand, the instructions must be read in context. "The charge to the jury must be considered as a

whole and the Court will not condemn a charge because of the way in which it is expressed or because an isolated part of it does not seem to do justice to one side or the other." *Morris v. Christopher*, 255 Md. 372, 378, 258 A.2d 172, 176 (1969) (citing *Nora Cloney & Co. v. Pistorio*, 251 Md. 511, 515, 248 A.2d 94, 96 (1968)).

*Smith v. State*, 403 Md. 659, 663–64, 944 A.2d 505, 507 (2008).

In *Gasper v. Ruffin, supra*, while holding that the Circuit Court erred when it instructed the jury that the Respondent was required to persuade the jury that her opposition to harassing conduct was a *determining factor* in the decision to terminate her employment, the Court of Special Appeals stated:

Discussions of the standard for proving employment discrimination under Title VII of the United States Code are instructive. In a plurality decision, in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), Justice Brennan, writing for the plurality, stated that[:]

when a plaintiff ... proves that her gender played a *motivating* part in an employment decision, the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account.

*Id.* at 258 [109 S.Ct. 1775] (emphasis added).

The "motivating factor" test was later ratified by a unanimous Supreme Court decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). In *Costa*, the Court concluded, "In order to obtain an instruction under [Title VII] *§ 2000e–2(m)*, a plaintiff need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that 'race, color, religion, sex, or national origin was a *motivating factor* for any employment practice.'" *Id.* at 101 [123 S.Ct. 2148] (emphasis added).

Ruffin argues that *Price Waterhouse* and *Costa* addressed only "mixed-motive" cases of discrimination, attempting to distinguish retaliation for protected conduct as a "single motive" claim. Ruffin's assertion that the proper standard is a "but for" test does not comport with Maryland law. Specifically, this Court has previously determined that the correct test for determining retaliatory discharge claims is whether the protected conduct was a "motivating factor" in the discharge. See *Magee v. DanSources Tech. Servs.*, 137 Md.App. 527, 565–66, 769 A.2d 231 (2001).

Ruffin, however, relies on [*Molesworth v. Brandon*], 341 Md. 621, 672 A.2d 608 (1996), where the Court of Appeals reviewed the following instruction:

To find that the Plaintiff was wrongfully discharged, you must find that her termination was motivated by sex discrimination. In other words, the Plaintiff was fired because she was a female.

... The Plaintiff must prove the Defendant intentionally discriminated [against] the Plaintiff. That is, but for the Plaintiff's gender, the Defendant would not have made the decision not to continue the Plaintiff's employment.

*Id.* at 645 [672 A.2d 608].

The Court of Appeals noted that "[t]hese instructions adequately describe the burdens of proof in a sex discrimination case." *Id.* Ruffin cites this language for the proposition that "but for" is the correct standard of proof in a retaliatory discharge case. We rejected this same interpretation in *Magee, supra,* noting that while the *Molesworth* Court did approve the instruction recited above, it added a footnote to the phrase "but for":

The plurality decision in *Price Waterhouse* [*v. Hopkins,* 490 U.S. 228, 240, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) ], ruled that "[t]o continue the words 'because of' as a colloquial short hand for 'but for causation,' ... is to misunderstand them."

Title VII meant to condemn even those decisions based on a mixture of legitimate and illegitimate considerations.

When, therefore, an employer considers both gender and legitimate factors at the time of making a decision, that decision was "because of" sex and the other, legitimate considerations—even if we may say later, in the context of litigation, that the decision would have been the same if gender had not been taken into account. *Id.* at 241 [109 S.Ct. 1775].

*Magee, supra,* 137 Md.App. at 566 [769 A.2d 231] (quoting *Molesworth, supra,* 341 at 645 n. 8 [672 A.2d 608] ).

As we previously held in *Magee,* we find the following language from our opinion in *Brandon v. Molesworth,* 104 Md.App. 167, 655 A.2d 1292 (1995), *aff'd in part, rev'd in part,* 341 Md. 621, 672 A.2d 608 (1996), consistent with the plurality opinion in *Price Waterhouse,* and the Supreme Court's unanimous opinion in *Costa:*

Although the employee bears the burden of persuasion that discrimination was "a motivating factor," the employee need not prove that but for the discrimination she would not have been discharged.

*Brandon, supra,* 104 Md.App. at 191 [655 A.2d 1292].

Gasper is correct that "determining factor" is not the same as "motivating factor." Motivate has been defined as to "provide a motive for doing something." THE NEW OXFORD DICTIONARY 1113 (2001). "Determine" has been defined as "be the decisive factor in" an action. *Id.* at 466. Without wading into deeper semantic waters, we agree that the use of "determining" in place of "motivating" is confusing, and does not reflect the correct standard of proof.

We believe Maryland law to be settled that a plaintiff's burden is to prove that the exercise of his or her protected activity was a "motivating" factor in the discharge, thereby creating burden-shifting to the defendant. An instruction that imposes upon a plaintiff the burden of proving that the exercise of his or her protected activity was the "determin-

ing" factor in the discharge from employment is a misstatement of the law, and erroneous.

183 Md.App. at 219–22, 960 A.2d at 1233–34.

■ Before this Court, the Petitioner continues to argue that the above quoted jury instruction was a correct statement of the applicable law because (1) the Respondent's claim involves a "single motive" claim, rather than a "mixed-motive" claim, and (2) the Circuit Court was required to deliver an instruction that conformed to the language that this Court approved in *Molesworth v. Brandon, supra.* As to the first argument, we are persuaded that the theoretical distinction between "single motive" and "mixed-motive" cases is of no consequence whatsoever when—as is the situation in the case at bar—the jurors (who are entitled to accept all, part, or none of the evidence presented, and who are entitled to draw reasonable inferences from evidence that they accept as true) could reasonably find that the employer's decision to terminate was based upon *both* the employee's deficient performance *and* the employee's opposition to unlawful harassing conduct, the employee is entitled to a verdict in his or her favor if the jurors are persuaded that the employee's opposition to unlawfully harassing conduct played a *motivating* part in the employer's decision to terminate the employee's employment.

As to the Petitioner's second argument, our opinion in *Molesworth v. Brandon* does not include a holding that a "but for" (i.e. "determining factor") instruction is required in a retaliatory discharge case. That case involved a "common law wrongful discharge" action asserted by a veterinarian (Dr. Molesworth) against her former employers (Dr. Brandon, and his professional services corporation). In the Circuit Court for Anne Arundel County, a jury awarded Dr. Molesworth $39,189.00 in damages, and Dr. Brandon noted an appeal to the Court of Special Appeals, where he argued that (1) because he and his corporation are "statutorily exempt from the enforcement provisions of the Maryland Fair Employment Practice Act," neither he nor his corporation could be sued for

wrongful discharge, (2) the evidence presented was "insufficient" to support the verdict, and (3) the Circuit Court erroneously refused to instruct the jury "that if they found that the hirer and the firer was the same person and if they further found that the employment period was sufficiently short, they *could* infer, if they chose to do so, that the discharge was not due to discriminatory intent." *Brandon v. Molesworth,* 104 Md.App. 167, 203, 655 A.2d 1292, 1310 (1995).

In the above cited reported opinion, the Court of Special Appeals rejected appellants' first and second arguments, but agreed with the third. *Id.* Dr. Molesworth filed a petition for writ of certiorari. So did Dr. Brandon. After granting both petitions, this Court expressly stated that our opinion would address only two issues:

> The issues in this case are first, whether a common law cause of action for wrongful discharge of a female employee based on sex discrimination lies against an employer with less than fifteen employees and second, whether, in such a case, the court must instruct the jury that where the same person hires and fires the employee, there is an inference that the discharge was not due to the employee's sex.

*Molesworth v. Brandon,* 341 Md. 621, 624, 672 A.2d 608, 609 (1996). As to the first issue, this Court held "that Art. 46B, § 14 provides a clear statement of public policy sufficient to support a common law cause of action for wrongful discharge against an employer exempted [from the administrative process of the Act]" by Art. 49B, § 15(b). Id. at 637, 672 A.2d at 616. As to the second issue, while noting that "the defendant was free to argue to the jury that since the same person hired and fired the defendant they may infer that the discharge was not due to sex discrimination[,]" this Court held "that the trial court properly refused to instruct the jury that where the same person hires and fires the plaintiff they must infer that the discharge was not motivated by sex discrimination." *Id.* at 646, 672 A.2d at 620. We therefore remanded the case to the Court of Special Appeals with directions to affirm the judgment of the Circuit Court for Anne Arundel County. *Id.* Our mention that the quoted instruction was "adequate" sim-

ply does not constitute a holding that a plaintiff in the Respondent's position is required to persuade the jury that "the plaintiff's opposition to [unlawful] harassing conduct was a *determining factor* in the decision to discharge her."

From our review of the record, we hold that the applicable law was not fairly covered by the jury instructions, and that the erroneous instruction at issue was anything but an "isolated part" of the instructions. We therefore affirm the holding of the Court of Special Appeals that Respondent is entitled to a new trial at which she will be required to persuade the jury that her opposition to harassing conduct was a *motivating* factor in the decision to terminate her employment.

## II & III

In *Adamson v. Corr. Med. Servs.*, 359 Md. 238, 753 A.2d 501 (2000), this Court stated:

> In reviewing the underlying grant of a motion to dismiss, we must assume the truth of the well-pleaded factual allegations of the complaint, including the reasonable inferences that may be drawn from those allegations. We have noted that "the facts comprising the cause of action must be pleaded with sufficient specificity. Bald assertions and conclusory statements by the pleader will not suffice." In the end, "[d]ismissal is proper only if the alleged facts and permissible inferences, so viewed, would, if proven, nonetheless fail to afford relief to the plaintiff." In sum, because we must deem the facts to be true, our task is confined to determining whether the trial court was legally correct in its decision to dismiss.

*Id.* at 246, 753 A.2d at 505. (Citations omitted).

The Respondent's negligent hiring/retention claim is based upon the assertions that, although it (1) knew that sexual harassment allegations had been made against Ahmed, and (2) had terminated Ahmed's employment as a result of those allegations, the Petitioner rehired Ahmed even though (in the words of the Respondent) "it was foreseeable that [Ahmed] would retaliate against employees complaining of assault." As

the Court of Special Appeals noted, "[The Respondent] posits that Ahmed's earlier conduct resulting in his discharge by [the Petitioner], and [the Petitioner's] reemployment of him is tantamount to [the Petitioner's] having 'knowingly hired a fox to guard the henhouse' and that [the Petitioner] 'intentionally retained him to clean house of any hens who complained.' " 183 Md.App. at 228, 960 A.2d at 1238.

■ The Petitioner argues that this claim is preempted by 42 U.S.C. §§ 2000(e) *et seq.* ("Title VII"), by Article 49B, § 42 of the Maryland Code ("the Maryland Human Relations Act"), and/or by Title 27 of the Montgomery County Code because this claim "arise[s] solely out of her claims for sexual harassment and retaliation." According to the Petitioner, this argument is controlled by *Watson v. Peoples Ins. Co.*, 322 Md. 467, 588 A.2d 760 (1991), in which this Court stated:

> The source of the policy against hostile environment sexual discrimination is statutory, and exclusively statutory. Those statutes provide the remedies for their violation. Thus the abusive discharge tort would not reach [defendant's] retaliation even if [plaintiff's] suit against it is interpreted to be based on [defendant's] permitting a 'hostile environment' in which [the harasser] has committed the assault.

*Id.* at 480, 588 A.2d at 766.

The Respondent argues that the following analysis in *Watson* explains why her claim is not preempted:

> Under the trial court's instructions it was also possible for the jury to have found that Peoples' discharge of Watson was motivated by Watson's suit against [her fellow employee] for assault and battery. We hold that it is contrary to a clear mandate of public policy to discharge an employee for seeking legal redress against a co-worker for workplace sexual harassment culminating in assault and battery. Thus, Peoples was not entitled to a motion for judgment entirely dismissing the plaintiff's claim.

*Id.* at 480–481, 588 A.2d at 766. (Footnote omitted).

■ It is clear that *Watson* stands for the proposition that, completely independent of any statutory sexual harassment

regulations, public policy prohibits an employer from terminating the employment of an employee in retaliation for the employee's assertion of his or her rights as the victim of an assault and battery. As the *Watson* Court stated:

> Essentially Peoples seeks a preemption result. But the fact that the assault and battery in the instant case arise out of sexual harassment in the workplace does not end the inquiry. Long antedating Title VII and the Act, public policy, as manifested in civil and criminal law, provided sanctions against attempted and consummated harmful and offensive touching of the person, whether or not sexually motivated. Had Title VII or the Act never been enacted, a clear mandate of public policy still supported Watson's recourse to legal redress against [her fellow employee] under the circumstances here. Where right and remedy are part of the same statute which is the sole source of the public policy opposing the discharge, *Makovi* [*v. Sherwin–Williams Co.* 316 Md. 603, 561 A.2d 179 (1989) ] and *Chappell* [*v. Southern Maryland Hosp. Inc.*, 320 Md. 483, 578 A.2d 766 (1990) ] dictate the result that the tort of abusive discharge, by its nature, does not lie. In the instant matter there are multiple sources of public policy, some within and some without Title VII and the Act. By including prior public policy against sexual assaults, the anti-discrimination statutes reinforce that policy; they do not supersede it.

*Id.* at 485–486, 588 A.2d at 769.

> As the Court of Special Appeals explained:
> While Gasper's complaint contained allegations of sexual harassment, it also alleged retaliation in response to her attempts to seek legal redress for assault and battery. We agree with Ruffin's assertion that Gasper seeks two remedies for the same wrong. Nonetheless, she seeks to enforce two distinct public policies. On the one hand, it is contrary to public policy to retaliate against an employee who reports sexual harassment. On the other, it is also contrary to public policy for an employer to retaliate against an employee in response to the employee's attempt to seek legal redress for assault and battery. We apply the Court's

observation in *Watson*—that, had the Human Rights Act and Title 27 of the Montgomery Code never been enacted, public policy still supports her legal redress for alleged assault and battery.'

183 Md.App. at 230, 960 A.2d at 1239. We agree with that analysis.

█ In the alternative, the Petitioner argues that the Respondent's negligent hiring/retention claim is preempted by the Maryland Workers' Compensation Act (MWCA),[2] and urges us to adopt the analysis found in *Newman v. Giant Food, Inc.*, 187 F.Supp.2d 524 (D.Md.2002), in which the United States District Court for the District of Maryland held that "[t]he [M]WCA provides the exclusive remedy 'to an employee for an injury or death arising out of and in the course of employment' unless the injury is shown to be the result of 'the deliberate intent of the employer to injure or kill the covered employee.'" *Id.* at 529.

Although *Newman* also involved a negligent hiring/retention claim, we are not surprised that, as the Court of Special Appeals noted, "[the Petitioner] has referred us to no *Maryland* authority, and we have found none, to support its claim of preemption under the MWCA." 183 Md.App. at 232, 960 A.2d at 1240. (Emphasis supplied). We reject the proposition that the General Assembly intended that the Workers' Compensation Commission is the exclusive forum in which a negligent hiring/retention claim must be litigated whenever such a claim is asserted by an employee against his or her employer as a result of intentional and unlawful misconduct of a fellow employee. A contrary conclusion would be unreasonable in the extreme.

We therefore affirm the holding of the Court of Special Appeals that the Respondent's negligent hiring/retention claim was not preempted by Title VII, by the Maryland Human Rights Act, by the Montgomery County Code, or by the MWCA. If the Petitioner is unable to persuade the Circuit

---

2. Md. Labor and Employment Code Ann. § 9–101 et seq. (2010)

Court that there is some other reason why it is entitled to a judgment as a matter of law, a jury shall determine whether there is any merit in the Respondent's negligent hiring/retention claim.

## IV

The Respondent's rhetorical question, which assumes that Md. Rule 5–404(b) is applicable to a civil case, prompts us to reaffirm the proposition that appellate courts cannot be expected to either (1) search the record on appeal for facts that appear to support a party's position, or (2) search for the law that is applicable to the issue presented. *State Roads Comm. v. Halle*, 228 Md. 24, 32, 178 A.2d 319, 323 (1962); *Clarke v. State*, 238 Md. 11, 22–23, 207 A.2d 456, 462 (1965). Nowhere in the voluminous record is there a satisfactory proffer of precisely what testimonial and/or documentary evidence that the Respondent requested permission to introduce.[3] We trust that, on remand, testimonial proffers shall begin with, "Your Honor, if the following witnesses are permitted to testify about this event, here is precisely what each witness's testimony will be," and shall be followed by fair, accurate, and complete summaries of the anticipated testimony. If there is a question about whether a particular proffer is accurate or "overblown," the Circuit Court has discretion to withhold its ruling and require that the proffer be made in testimonial form out of the presence of the jury, with the witness under oath.

While holding that the Circuit Court did not abuse its discretion in excluding evidence of events that predated Mr. Ahmed's rehiring, the Court of Special Appeals stated:

---

**3.** On May 17, 2007, after the jury had been excused for the day, the Respondent sought permission to introduce evidence of several events that allegedly occurred in 2002. These events, which had been the subject of testimony during eight depositions, were apparently offered to show that (1) the Petitioner's sexual harassment policy was inadequate, and (2) the Petitioner was—or should have been—on notice that Mr. Ahmed, who had been accused of sexual harassment in 2002, was the proverbial "fox guarding the hen house."

The trial court reasoned that the alleged harassment suffered by Gasper came at the hands of a front desk employee, Bridges, not Ahmed. The court further noted that Ahmed's past conduct, which Gasper sought to admit, was "identical" to the alleged conduct by Bridges. The court determined that the evidence would only lead the jury to conclude that, because Ahmed had committed these violations in the past, Bridges' conduct would be imputed to Ruffin, to Ruffin's prejudice. As the trial court correctly noted, Md. Rule 5–404(b) prohibits prior acts evidence to "prove character of a person to show action in conformity therewith." Further, the trial court determined that the evidence might well confuse the jury, as they would "have to tangle and untangle the incidents that happened in 2002 and somehow try and sort that out and see what relevance they have to this 2005 incident."

We reiterate that we shall not disturb a trial court's decision to admit or exclude evidence absent an abuse of discretion. *See Phoenix Servs. Ltd. Partnership v. Johns Hopkins Hosp.,* 167 Md.App. 327, 408, 892 A.2d 1185, cert. denied, 393 Md. 244, 900 A.2d 750 (2006). The trial court's decision was well-reasoned and applied to evidence presented by Gasper in her case in chief.

We find no abuse of discretion in the trial court's ruling. Because we affirm the trial court's determination that the evidence was inadmissible under Md. Rule 5–403, we need not address Gasper's other theories of admissibility.

183 Md.App. at 225–226, 960 A.2d at 1237.

Maryland Rule 5–401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." It is frequently stated that the issue of whether a particular item of evidence should be admitted or excluded "is committed to the considerable and sound discretion of the trial court," and that the "abuse of discretion" standard of review is applicable to "the trial court's determination of relevancy."

*See e.g. Merzbacher v. State,* 346 Md. 391, 404–05, 697 A.2d 432, 439 (1997). Maryland Rule 5–402, however, makes it clear that the trial court does not have discretion to admit irrelevant evidence.[4] While the "clearly erroneous" standard of review is applicable to the trial judge's factual finding that an item of evidence does or does not have "probative value," the "de novo" standard of review is applicable to the trial judge's conclusion of law that the evidence at issue is or is not "of consequence to the determination of the action." *Parker v. State,* 408 Md. 428, 437, 970 A.2d 320, 325 (2009), (citations omitted) (quoting *J.L. Matthews, Inc. v. Md.-Nat'l Capital Park & Planning Comm'n,* 368 Md. 71, 92, 792 A.2d 288, 300 (2002)).

Although a trial court does not have discretion to admit irrelevant evidence, a trial court does have discretion to exclude relevant evidence "on grounds of [unfair] prejudice, confusion, or waste of time." Md. Rule 5–403 provides:

**EXCLUSION OF RELEVANT EVIDENCE ON GROUNDS OF PREJUDICE, CONFUSION, OR WASTE OF TIME**—Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

 "When the trial judge's ruling involves a weighing [of both the probative value of a particular item of evidence, and of the danger of unfair prejudice that would result from the admission of that evidence], we apply the more deferential abuse of discretion standard [of review]." *Matthews, supra,* 368 Md. at 92, 792 A.2d at 300.

---

4. Md. Rule 5–402 provides:
 **RELEVANT EVIDENCE GENERALLY ADMISSIBLE; IRRELEVANT EVIDENCE INADMISSIBLE**—Except as otherwise provided by constitutions, statutes, or these rules, or by decisional law not inconsistent with these rules, all relevant evidence is admissible. **Evidence that is not relevant is not admissible.** (Emphasis supplied).

Because of our holding that a new trial is required in the case at bar, it would serve no useful purpose to review each and every particular item of evidence that the Respondent was prevented from introducing during the first trial, when only the "retaliatory discharge" claim was presented to the jury. Assuming that both the "retaliatory discharge" and negligent hiring/retention claims are litigated in the next trial, we are confident that the parties will have a full and fair opportunity to (1) present evidence that is relevant to both of those claims, (2) request pursuant to Md. Rule 5–105 that evidence that is admissible for one purpose, but not admissible for another purpose, be restricted "to its proper scope," and (3) argue for the exclusion of marginally relevant evidence that is needlessly cumulative and/or substantially outweighed by the danger of unfair prejudice. We are persuaded, however, that it would be useful to explain why Md. Rule 5–404(b) is not applicable to evidence offered in a civil case by either a plaintiff or a defendant.

Maryland Rule 5–404(b) provides:

**CHARACTER EVIDENCE NOT ADMISSIBLE TO PROVE CONDUCT; EXCEPTIONS; OTHER CRIMES—(b) Other Crimes, Wrongs, or Acts.**—Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident.

In *Lewin Realty v. Brooks*, 138 Md.App. 244, 771 A.2d 446 (2001), *aff'd on other grounds, Brooks v. Lewin Realty*, 378 Md. 70, 835 A.2d 616 (2003), the Court of Special Appeals held that, "in conformity with its plain language, its purpose, and the federal case law interpreting FRE 404(b), Md. Rule 5–404(b) applies to defendants in civil cases as well as criminal cases." *Id.* at 266, 771 A.2d at 459. After issuing a writ of certiorari to address the issue of whether that holding was correct, this Court ordered that the parties file additional briefs to address the question of whether, in a lead paint

premises liability action against a landlord, the tenant was required to show that the landlord had notice of housing code violations in order to establish a prima facie case that the landlord was negligent. In *Brooks v. Lewin Realty, supra,* we held that the answer to this question is "no." 378 Md. at 89, 835 A.2d at 627. In that case, however, we did not address the issue of whether Md. Rule 5–404(b) entitles "defendants in civil cases" to the exclusion of relevant evidence that is not *substantially* outweighed by the danger of unfair prejudice.

In *Sessoms v. State,* 357 Md. 274, 744 A.2d 9 (2000), this Court issued a writ of certiorari to answer the question of whether "the test for admitting other crimes evidence enunciated in [*State v. Faulkner* ], 314 Md. 630, 552 A.2d 896 (1989), [applies] when such evidence is not offered against the defendant, but in order to establish a defense?" *Id.* at 277, 744 A.2d at 10 (brackets in original). While answering "no" to this question, we noted that

> Faulkner created a three-part test that a trial judge must apply before admitting other crimes evidence: (1) "determine whether the evidence is prima facie admissible because it fits within any exception to the presumptive rule of exclusion," *Conyers v. State,* 345 Md. 525, 550, 693 A.2d 781, 793 (1997) (citing *Faulkner,* 314 Md. at 634, 552 A.2d at 898); (2) determine "whether the accused's involvement in the other crimes is established by clear and convincing evidence," *Faulkner,* 314 Md. at 634, 552 A.2d at 898; and (3) "[t]he necessity for and probative value of the other crimes evidence is to be carefully weighed against any undue prejudice likely to result from its admission." *Id.* at 635, 552 A.2d at 898.

*Id.* at 281, n. 2, 744 A.2d at 13 n. 2. We also stated:

> We have never extended the use of [the evidence of other crimes, wrongs, or acts] rule beyond the scope of a criminal defendant and we refuse to do so today.

> \*　　\*　　\*

The State argues that because Maryland Rule 5–404(a) [distinguishes the use of character evidence based on wheth-

er the character at issue is of the accused, the victim, or a witness], Rule 5–404(b) which uses the general term "person," indicates that the Court of Appeals and the Rules Committee intended for this rule to apply to persons other than the defendant. We reject this argument.

*Id.* at 283, 286, 744 A.2d at 14, 16.

Although three judges disagreed with the majority's fact-specific conclusion that the defendant was entitled to a new trial, Judge Wilner's dissenting opinion stated:

> I agree that the strong policy this Court has adopted against the use of "other crimes" evidence, except as filtered through a *State v. Faulkner* analysis, should ordinarily be limited to the use of that evidence against a defendant in a criminal case. As the Court correctly points out, it is the perceived trustworthiness of that evidence that makes it so particularly dangerous when offered against the defendant—the fear that the jury may convict for reasons other than a belief beyond a reasonable doubt that the defendant committed the crime for which he or she is standing trial. It is in that setting that the policy confirmed by us in *Harris v. State,* 324 Md. 490, 597 A.2d 956 (1991), of generally *excluding* such evidence, subject to limited *inclusionary* exceptions, rather than *including* such evidence subject to *exclusionary* exceptions, has particular meaning.

*Id.* at 301–02, 744 A.2d at 14. (Emphasis in original).

While Md. Rule 5–404(b) is derived from FRE 404(b), and while there are federal cases holding that FRE 404(b) is applicable to civil cases as well as criminal cases, those federal cases construe FRE 404(b) "as one of 'inclusion,' and not 'exclusion.' " *See e.g. United States v. Long,* 574 F.2d 761, 766 (3d Cir.1978). In *Harris v. State,* 81 Md.App. 247, 567 A.2d 476 (1990), *rev'd* 324 Md. 490, 597 A.2d 956 (1991), while citing *Long* with approval, the Court of Special Appeals noted that, "Congress, in amending the Advisory Committee's draft of FRE 404(b), deliberately changed the language in order to stress the inclusionary character of the rule." 81 Md.App. at 279, 567 A.2d at 492. In *Harris v. State,* 324 Md. 490, 597

A.2d 956 (1991), however, while reversing the Court of Special Appeals, this Court expressly rejected the "inclusionary" approach, stating:

> By stating the rule in exclusionary form—evidence of other bad acts is generally not admissible—followed by an exception for those instances in which the evidence 1) has special relevance, i.e., is substantially relevant to some contested issue in the case and is not offered simply to prove criminal character, and 2) has probative force that substantially outweighs its potential for unfair prejudice, the focus is correct, and the burden is where it belongs.... [I]t will be the exceptional, and not the usual case, where the evidence of other bad acts is substantially relevant for reasons other than proof of criminal character.
>
> &ast; &ast; &ast;
>
> The exclusionary form of the rule clearly serves to remind the bench and bar that, unlike most other evidence, this evidence carries with it heavy baggage that must be closely scrutinized before admissibility is warranted.

324 Md. at 500, 597 A.2d at 961–62.

Maryland Rule 5–404(b) was one of the Maryland Rules of Evidence adopted by this Court in 1993, after the proposed Rules were submitted to us in the One Hundred Twenty–Fifth Report of the Rules Committee. In that Report, the RE-PORTER'S NOTE to proposed Md. Rule 5–404(b) stated:

> The admissibility of evidence of specific acts for some purpose other than as character evidence typically will be governed by Rule 5–403, and a limiting instruction is appropriate.
>
> There is substantial variation in the quantum of evidence required to establish the "crimes, wrongs, or acts" within [Federal] Rule 404(b). In *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496 [99 L.Ed.2d 771] (1988), the Supreme Court held that the standard for admissibility of "other crimes, wrongs or acts" under F.R.Ev. 404(b) is governed by the conditional relevancy standard of Rule 104(b), subject to the general requirements or relevancy

under F.R.Ev. 402 and the balancing of probative value against the counterfactors enumerated in F.R.Ev. 403. Thus, the quantum of evidence required to establish the admissibility of prior misconduct in federal practice under Rule 404(b) is not clear and convincing evidence, not even a preponderance of the evidence (as it would be under F.R.Ev. 104(a)), but only such evidence as would permit the jury to find the existence of the other misconduct. The possibility of prejudice is to be dealt with pursuant to Rule 403.

Maryland, on the other hand, requires clear and [convincing] evidence. *Harris v. State,* 324 Md. at 498 [597 A.2d 956], citing *State v. Faulkner,* 314 Md. 630 [552 A.2d 896] (1989). Because of the potential for mischief in the admission of evidence of other misconduct, the Committee believes that current Maryland practice is preferable and intends to make no change in Maryland law. In short, *Huddleston v. United States* is rejected, and "other crimes, wrongs, or acts" must be established by clear and convincing evidence.

■ Because the foundational requirements of FRE 404(b) are so vastly different from the foundational requirements of Md. Rule 5–404(b), we are persuaded that Md. Rule 5–404(b) should continue to be applicable only to evidence offered by the State against the defendant in a criminal case. In civil cases, whether the evidence at issue is offered by a plaintiff or by a defendant, the admissibility of relevant evidence that presents the "possibility of [unfair] prejudice is to be dealt with pursuant to [Md.] Rule [5–] 403."

Many cases decided by this Court before we adopted the Maryland Rules of Evidence presented us with the issue of whether the trial court had erroneously overruled an objection to the introduction of a particular item of marginally relevant evidence that created the danger of unfair prejudice to the objecting party. Our prior opinions provide guidance to the trial judge who is required by Md. Rule 5–403 to (1) admit enough of the relevant evidence to prove what the party

offering the evidence has a right to prove, and (2) exclude the introduction of details that contribute virtually nothing, but trigger the risk of an emotional overreaction by the jury. Those opinions include *Medical Mutual v. Evans*, 330 Md. 1, 622 A.2d 103 (1993), *rev'g* 91 Md.App. 421, 604 A.2d 934 (1992).

In that case, this Court held that the trial judge had erroneously admitted specific details that did not need to be introduced in order to establish a witness's bias, because the witness's bias could be established without introducing the details that were likely to arouse the jurors' passion. *Evans* involved a "bad faith" (failure to settle) action in which the respondent's counsel cross-examined the insurance company's former claims manager about the emotional details of "a virtually identical situation" (a damage award in excess of the doctor's coverage; an assignment of the "excess" judgment; and a successful action against the insurance company). While affirming the judgment on the ground that the Circuit Court gave a limiting instruction to the jury, the Court of Special Appeals stated:

> [W]e agree that the questioning about the other case was improper and prejudicial. [The former claims manager] could simply have asked whether, in an earlier case, he had caused appellant to pay an amount in excess of its policy limits based on a charge that [he] had refused to settle the underlying claim within the policy limits and whether that episode had any influence on [his] testimony in the present case. There simply was no need to get into the nature of the earlier claim; it had no relevance whatever and, patently, was injected not to show bias but rather to show prior bad conduct on appellant's part.

91 Md.App. at 429, 604 A.2d at 938 (1992). This Court ordered a new trial on the ground that the trial judge should have granted the petitioner's motion for a mistrial when the intimate details of the earlier case were presented to the jury. 330 Md. at 24, 622 A.2d at 114. In doing so, however, we did not hold that the Circuit Court should have applied the *Faulkner* "three-part [quantum of evidence] test" or the *Har-*

*ris* "exclusionary" rule to the evidence that should have been excluded on the ground of unfair prejudice.

■■■ If the Respondent's negligent hiring/retention claim survives whatever additional pretrial challenges are asserted by the Petitioner, the Circuit Court must provide the Respondent with the opportunity to present the jury with evidence on each element of that cause of action,[5] which includes proof of the fact that the Petitioner "knew or should have known by the exercise of diligence and reasonable care that [Mr. Ahmed] was capable of inflicting [the] harm [that he inflicted upon the Respondent]." Paul Mark Sandler and James K. Archibald, Pleading Causes of Action in Maryland, § 3.45, pp. 199–200 (4th ed.2008). Neither the *Faulkner* foundational requirements nor the *Harris* rule will be applicable to evidence of "*what* the Petitioner knew—or should have known—about Mr. Ahmed, and *when* the Petitioner knew—or should have known—it." Although Md. Rule 5–404(b) does not apply to such evidence, if the Respondent presents evidence that is admissible for no other purpose, Md. Rule 5–105 requires that the Circuit Court, "upon request, [ ] restrict the evidence to its proper scope and instruct the jury accordingly."

At the same time, however, because Md. Rules 5–401, 5–402, and 5–403 are applicable to evidence of "what the Petitioner knew—or should have known—about Mr. Ahmed, and when the Petitioner knew—or should have known—it," the Circuit Court must exclude any particular item of evidence that (1) is irrelevant for any purpose, and/or (2) although marginally relevant, is substantially outweighed by the danger of unfair prejudice to the Petitioner.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; PETITIONER TO PAY TWO–THIRDS OF THE COSTS; ONE–THIRD OF THE COSTS TO BE PAID BY RESPONDENT.**

---

5. The cases that set forth the essential elements of a negligent hiring/retention claim are collected in the Comment to MPJI 19:4 (4th ed.2004), as well as well as in the COMMENT to the Sandler & Archibald "Pleading" treatise cited in this opinion.